PEOPLE v AVANT

Docket No. 206321. Submitted February 10, 1999, at Grand Rapids. Decided May 14, 1999, at 9:05 A.M.

Timothy E. Avant was convicted by a jury in the Berrien Circuit Court, Daniel R. Deja, J., of felonious assault and possession of a firearm during the commission of a felony. He was sentenced as a second-offense habitual offender to one to six years' imprisonment for the felonious assault conviction, to be served following two years' imprisonment for the felony-firearm conviction. The defendant appealed.

The Court of Appeals *held*:

1. Sufficient evidence was presented to support the convictions.

2. The defendant failed to demonstrate, with regard to his allegation that he was denied the effective assistance of counsel, that either reversal of his convictions or a remand for a evidentiary hearing is warranted.

3. Defendant's allegations of prosecutorial misconduct involved either proper conduct by the prosecutor or instances where a curative instruction, if one had been requested, could have alleviated any prejudice to the defendant. No miscarriage of justice will result from the issue's not being considered further.

4. The court erred in advising, in the presence of the jury, a witness of his Fifth Amendment rights against self-incrimination. However, under the circumstances of this case, the error could not have been decisive of the outcome and, therefore, reversal of the convictions is not warranted.

5. The court in imposing the sentence for the felonious assault conviction did not err in considering the lethal nature of the weapon used by the defendant. That the defendant was also convicted of felony-firearm did not make that consideration inappropriate.

6. The sentence for the felonious assault conviction is proportionate. The convictions and sentences must be affirmed. However, the judgment of sentence incorrectly states that the defendant was convicted of a violation of MCL 750.87; MSA 28.282 instead of the actual conviction of felonious assault, MCL 750.82; MSA 28.277.

The matter must be remanded for the limited purpose of correcting the judgment of sentence.

Affirmed and remanded.

1. TRIAL — WITNESSES — PRIOR STATEMENTS.

A witness may be questioned concerning a prior written or oral statement made by the witness, and it is not necessary that the written statement be introduced into evidence or that the hearer first testify regarding the contents of the statement (MRE 613[a]).

2. TRIAL — WITNESSES — SELF-INCRIMINATION.

A court that finds it necessary to advise a witness of Fifth Amendment rights against self-incrimination should do so out of the presence of the jury; the failure to have the jury removed before advising the witness does not automatically require reversal of the defendant's conviction (US Const, Am V).

3. CRIMINAL LAW — SENTENCES — FELONIOUS ASSAULT — FELONY-FIREARM.

A court sentencing a defendant for convictions of felonious assault and possession of a firearm during the commission of a felony may take into account in imposing the sentence for the felonious assault conviction the type of weapon the defendant used in committing the assault.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Angela Pasula*, Prosecuting Attorney, and *Elizabeth A. Wild*, Assistant Prosecuting Attorney, for the people.

*David M. Hartsook*, for the defendant on appeal

Before: WHITBECK, P.J., and CAVANAGH and GRIFFIN, JJ.

CAVANAGH, J. Defendant Timothy Avant appeals as of right his jury trial convictions of felonious assault, MCL 750.82; MSA 28.277, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). The trial court sentenced defendant as an habitual offender, second offense, MCL 769.10; MSA 28.1082, to a term of one to six years' imprisonment for the felonious assault conviction and to the

mandatory consecutive term of two years' imprisonment for the felony-firearm conviction. We affirm but remand for the correction of the judgment of sentence.

The prosecution's theory of the case was that the complainant, Binh Doan, became lost and stopped to ask for directions from defendant, Jimmy Hornes, and Jewon Cannon, who then robbed him at gunpoint. The defense claimed that Doan had sought drugs from defendant and his companions, who traded soap chips (fake drugs) for Doan's leather jacket and cellular phone. After realizing that he had been conned, Doan had called the police and concocted the story about a robbery.

Doan testified that on the evening of December 22, 1996, he and a friend, Nam Vo, went to Le Chic nightclub in Benton Harbor. Doan was wearing a leather jacket and carrying sixty dollars and a cellular phone. The pair headed home around 1:00 A.M., but were in an unfamiliar area and became lost. Doan and Vo saw three men standing on the sidewalk, so Vo stopped the car and Doan went up to the men and asked for directions. Doan apparently conversed with the men for a few moments, then told them that he had to urinate and moved a short distance away. When Doan was finished, he turned around and saw that one of the men, whom he identified as defendant, was pointing a long gun at his face. While defendant continued to point the weapon at Doan, the other two men took his jacket, his cellular phone, and his cash. Doan then walked back to the car, got in, and told Vo to drive away. When Doan saw a restaurant, Vo stopped the car, and Doan went inside and called the police. Doan and Vo then drove back to the scene of the alleged

robbery and spotted the three men sitting in a burgundy car. They memorized the car's license plate number and returned to the restaurant to wait for the police. Doan denied attempting to purchase drugs from defendant and his companions.

Officer Steve Bobo of the Benton Harbor Police Department testified that he met Doan and Vo at a restaurant on Main Street. They told him that Doan was robbed by three black men who had a weapon that appeared to be an AK-47 rifle. Doan and Vo took Officer Bobo to the scene of the alleged robbery and gave him the license plate number of the car in which they had seen the men. Officer Bobo forwarded the information to other units. After about ten or fifteen minutes, Officer David Neal radioed that he had spotted a car matching the description at a gas station. Officer Bobo brought Doan and Vo to the gas station, where they identified three men already in custody as the ones who had robbed Doan. Doan further identified a cellular phone found in the suspects' car as his.

Officer Neal testified that while on patrol, he spotted an unoccupied vehicle fitting the description of a car related to an armed robbery. Officer Neal drove through the parking lot of the gas station where the car was parked, and his partner noted that the license plate number matched the information they had received. Officer Neal requested assistance. As additional units arrived, three black males got into the car and began to back out of the parking space. The police then blocked the car in and ordered the occupants to get out. The men in the car were identified as defendant, Hornes, and Cannon. Cannon was carrying $168.

The police subsequently went to Hornes' mother's house, where Hornes was known to reside on occasion, and received permission to search from Hornes' mother. In the basement, where Hornes stayed, Officer Neal found in a dresser drawer two thirty-round magazines for an assault rifle. Under the drawer, Officer Neal discovered an assault rifle that contained one live round; Neal stated that if the weapon had been fired, the bullet would have gone through a refrigerator. Officer Bobo testified that he found a black leather jacket on a couch in the basement.

The prosecutor's final witness was Hornes. Hornes testified that he had pleaded guilty of unarmed robbery, MCL 750.530; MSA 28.798, the previous Friday and had agreed to testify truthfully as part of his plea agreement. Hornes stated that he and defendant are cousins. On December 22, 1996, Doan and Vo had asked Hornes and his companions if they had any crack cocaine. While Vo waited in the car, Doan went into Hornes' mother's house with the three men. Hornes and Cannon went into the bathroom, chopped up some soap, and put it in a plastic bag. They then joined defendant and Doan in the basement, and Doan traded his jacket and cellular phone for the fake drugs. Afterward, the four left the house, and Hornes and his companions ended up at the gas station, where they were arrested. As far as Hornes knew, defendant had not possessed a gun.

In response to the prosecutor's questions, Hornes admitted that he had told a different story at his plea hearing. Hornes conceded that he had previously testified that he and his companions had robbed Doan after they tried to sell Doan some fake drugs, and that

defendant had possessed an assault rifle. Hornes explained that he had testified as he had at the plea proceeding because his lawyer had told him that it was necessary in order to get the plea agreement.[1]

At this point, defense counsel objected. After a bench conference, and with the jury apparently still present, the trial court advised Hornes at length of his Fifth Amendment rights. US Const, Am V. At the request of Hornes' counsel, the trial court informed Hornes that his contradictory testimony could result in perjury charges. The trial court then recessed court so that Hornes could consult with his attorney. When court reconvened, Hornes' counsel informed the court that Hornes had chosen to continue to testify. Upon retaking the stand, Hornes persisted in asserting that he had testified as he had previously in order to get a plea agreement, and he was "here today to tell a true statement."

Defendant testified Doan came to the house with Cannon and Hornes. Defendant took Doan into the basement. Defendant saw an assault rifle partially under the couch and assumed that it had been left in the basement by a recent visitor from Chicago. Defendant offered to sell the weapon to Doan. Doan apparently declined, so defendant put the gun under the dresser drawer. Doan told defendant that he did not have any money. When Cannon and Hornes came downstairs, they accepted Doan's jacket and cellular phone in exchange for some soap chips (fake drugs). Defendant denied pointing the gun at Doan or taking sixty dollars from him.

---

[1] Hornes denied that his lawyer had told him to lie. Hornes explained that his lawyer "didn't know the truth 'cause he said I kept giving him so many different stories."

Defendant was charged with armed robbery, MCL 750.529; MSA 28.797, and felony-firearm. The jury convicted defendant of the lesser offense of felonious assault and felony-firearm. The trial court sentenced defendant as an habitual offender, second offense, to a term of one to six years' imprisonment for the felonious assault conviction and to the mandatory consecutive term of two years' imprisonment for the felony-firearm conviction.

I

Defendant first argues that the evidence presented at trial was insufficient to support his convictions. When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992). Circumstantial evidence and reasonable inferences arising therefrom may be sufficient to prove the elements of a crime. *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999).

The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery. *People v Davis*, 216 Mich App 47, 53; 549 NW2d 1 (1996). The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony. *Id.* Doan testified that defendant pointed an assault weapon at his face while defendant's companions took his jacket, cellular

phone, and cash. This testimony was sufficient for a reasonable factfinder to find that the elements of felonious assault and felony-firearm were established beyond a reasonable doubt.

Defendant contends that Doan was not credible because of the inconsistencies between his trial testimony, his preliminary examination testimony, and the testimony of other witnesses. From our review of Doan's testimony, at least some of the inconsistencies appear to result from his lack of proficiency in English. In any case, defense counsel ensured that the jury was well aware of the discrepancies in Doan's various accounts of the incident. Questions of credibility are left to the trier of fact and will not be resolved anew by this Court. *People v Givans*, 227 Mich App 113, 123-124; 575 NW2d 84 (1997).

Defendant also argues that the first element of felonious assault was not proved because the evidence did not establish that Doan was placed in fear.[2] Defendant points out that Doan testified that Doan returned to the scene of the crime because he was not afraid. However, defendant has selectively quoted Doan's testimony. When asked why he went back to the site of the alleged robbery, Doan explained, "I was scared when he point the gun at me, but when I got out the scene him pointing the gun at me, I'm not scared no more [sic]." On the basis of this testimony, we find sufficient evidence was presented to establish that Doan was placed in fear.

---

[2] A simple criminal assault is either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery. *People v Grant*, 211 Mich App 200, 202; 535 NW2d 581 (1995).

Finally, defendant asserts that his explanation of the events in question is more consistent with the other evidence presented than Doan's testimony.[3] However, viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could find that the elements of felonious assault and felony-firearm were proved beyond a reasonable doubt. See *Wolfe, supra.*

II

Defendant next asserts that he was denied the effective assistance of counsel at trial. Because there was no *Ginther*[4] hearing, our review is limited to errors apparent on the record. *People v Williams,* 223 Mich App 409, 414; 566 NW2d 649 (1997).

A defendant that claims that he has been denied the effective assistance of counsel must establish that (1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms, and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different. *People v Pickens,* 446 Mich 298, 302-303; 521 NW2d 797 (1994). A defendant must overcome a strong presumption that the assistance of his

---

[3] In particular, defendant emphasizes that his account of the events essentially matches that of Hornes. Defendant contends that this congruity is significant because he and Hornes were kept separate from the time of their arrest until defendant's trial. However, because defendant was present during Hornes' testimony, the similarity between Hornes' testimony and his subsequent testimony does not definitively establish the truthfulness of their version of the incident. See, generally, *People v Buckey,* 424 Mich 1, 14-16; 378 NW2d 432 (1985).

[4] *People v Ginther,* 390 Mich 436, 443; 212 NW2d 922 (1973).

counsel was sound trial strategy. *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994).

Defendant claims that defense counsel was ineffective because he failed to call Cannon as a witness at trial. However, counsel's failure to call a particular witness is presumed to be trial strategy. *People v Mitchell*, 454 Mich 145, 163; 560 NW2d 600 (1997). This Court will not substitute its judgment for that of trial counsel in matters of trial strategy. *People v Sawyer*, 222 Mich App 1, 3; 564 NW2d 62 (1997). Moreover, although defendant speculates that Cannon would have provided testimony favorable to him, the record is silent regarding what Cannon in fact would have testified.[5] Accordingly, defendant has not shown that a reasonable probability exists that, if counsel had called Cannon as a witness, the outcome of the proceedings would have been different. See *Pickens, supra*. Defendant has failed to demonstrate that either reversal of his convictions or a remand for an evidentiary hearing is warranted.

III

Next, defendant raises numerous claims of prosecutorial misconduct. When reviewing instances of alleged prosecutorial misconduct, this Court must examine the pertinent portion of the record and evaluate the prosecutor's remarks in context. The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Green*, 228 Mich App 684, 692-693; 580 NW2d 444 (1998).

---

[5] The prosecutor notes that, after defendant's trial, Cannon pleaded guilty of conspiracy to commit larceny of property valued at $100 or less, MCL 750.157a; MSA 28.354(1), MCL 750.356; MSA 28.588.

Defendant asserts that the prosecutor made improper references to defendant's exercise of his right to remain silent. Defendant correctly notes that when a defendant chooses to exercise his right to remain silent, that silence may not be used against him at trial. See *People v Bobo*, 390 Mich 355; 212 NW2d 190 (1973). However, in the present case, defendant did not exercise his right to remain silent after being advised of his *Miranda*[6] rights. Officer Gregory Abrams testified that defendant stated that he and Hornes had gone to a gas station to get something to eat. When defendant testified at trial, he proffered the story of selling fake drugs to Doan. During cross-examination, the prosecutor asked defendant why he had not given this account of the incident to the police. During closing argument, the prosecutor commented on the discrepancy between what defendant told the police and his description of events at trial. We conclude that the prosecutor's actions were not improper. Where a defendant makes statements to the police after being given *Miranda* warnings, the defendant has not remained silent, and the prosecutor may properly question and comment with regard to the defendant's failure to assert a defense subsequently claimed at trial. See *People v Davis*, 191 Mich App 29, 34-35; 477 NW2d 438 (1991).

Defendant also claims that the prosecutor improperly questioned Hornes regarding an inconsistent statement in a police report not admitted into evidence.[7] We disagree. MRE 613(a) allows the questioning of a witness concerning a prior written or oral

---

[6] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[7] The transcript of the prosecutor's questioning of Hornes contains the following:

*Q.* And when you talked to the police, Officer Abrams, right after the night of the incident, December 22nd of 1996, do you recall what you told Officer Abrams about who it was that had the gun on that occasion?

*A.* Officer Abrams asked me did Jewon have it.

*Q.* And what did you say?

*A.* I said, "I don't know."

*Q.* Oh, you didn't say, "Yes."

*A.* No.

*Q.* Your testimony today is, did you tell Officer Abrams that you didn't see any gun, but you believed Jewon had it. Did you tell him that?

*A.* Yes. The reason I said that is because I thought they was talking about a pistol. I didn't know they was talking about this big old gun.

*Q.* And that—that wasn't the truth either?

*A.* Yeah, that's the truth.

*Q.* Oh, Jewon had a gun that night?

*A.* No.

*Q.* It's your statement, Mr. Hornes. It's not mine.

*A.* No, I didn't say that Jewon had a gun that night. On that paper, it don't say Jewon had a gun that night. He asked me—

*Q.* This is what it said. Mr. Hornes stated he didn't see any gun, but believed Jewon had it.

[*Defense Counsel*]: Your Honor, I object. It is not evidence in this case.

[*The Prosecutor*]: I can impeach him with a prior inconsistent statement, your Honor.

*The Witness*: So Jewon was driving around with the big old gun right there in the little old car.

[*The Prosecutor*]: I think the Court needs to rule on the objection.

*The Witness*: The officer asked me—

*The Court*: Just a minute Mr. Hornes.

*The Witness*:—did he believe did Jewon had a gun.

[*The Prosecutor*]: Mr. Hornes, just a minute, please.

*The Witness*: Yes.

*The Court*: Well, I'll overrule the objection to this—this extent and you'll be instructed, members of the jury, that questions are not evidence. It's the answers that are evidence and that certainly that police report is not evidence and not credible evidence and will not be admitted. The question is being asked in order to elicit—testing the credibility of the witness, not—not concerning the information that was given, if you can follow the difference. She's [the prosecutor] reading something that someone—that a

statement made by that witness. Contrary to defendant's argument, MRE 613 does not require either that the written statement be introduced into evidence or that the hearer first testify regarding the contents of the statement. Moreover, because Hornes admitted that he had made the statement, the prosecutor's questions hardly implied that she had some special knowledge regarding the accuracy of the police report. Furthermore, we note that the trial court properly cautioned the jury that it could not use evidence of the prior inconsistent statements of the witness as substantive evidence, but rather could only use such statements in assisting it in determining whether the witness was truthful. See *People v McIntire*, 232 Mich App 71, 113; 591 NW2d 231 (1998).

Defendant also argues that the prosecutor referred to facts not in evidence during her rebuttal argument when she stated that Hornes had previously testified that defendant "pulled the gun out and tried to rob [Doan] after they tried to sell him some fake stuff." We conclude that defendant's assertion is simply incorrect. Hornes admitted that, during his plea proceeding, he had stated under oath that defendant had possessed a gun and had robbed the complainant. Thus, the prosecutor was not improperly arguing facts not in evidence. See *Stanaway, supra* at 686. Moreover, the prosecutor did not assert that Hornes'

---

police officer wrote down in his notes, so that's not—by the time you get to this stage of the proceedings, the reason [defense counsel is] objecting is is that—that's—what—what a police officer wrote down what someone told them doesn't necessarily mean that's what happened. Okay. So we don't let that in, but what [the prosecutor] is asking is if that is, in fact, what this witness told the police officer? That's where we're going with that. To that extent, we can listen to it. That's a prior inconsistent statement.

testimony at the plea proceeding constituted substantive evidence, but rather argued that, in light of his inconsistent statements, Hornes was not credible. A prosecutor may argue from the facts that a witness is not worthy of belief. *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996).

Defendant's remaining claims of prosecutorial misconduct are not preserved because defendant either failed to object at trial or objected on a different basis than he asserts as error on appeal. Accordingly, review is precluded unless a curative instruction could not have eliminated the prejudicial effect or the failure to consider the issue would result in a miscarriage of justice. See *People v Nantelle*, 215 Mich App 77, 86-87; 544 NW2d 667 (1996). We have reviewed each of these alleged instances of prosecutorial misconduct and we conclude that either the prosecutor's comments were proper or a curative instruction could have alleviated any prejudice to defendant. We are persuaded that a miscarriage of justice will not result from our declining to consider this issue further.

IV

Defendant next maintains that his conviction must be reversed because the trial court advised Hornes of his Fifth Amendment rights in the presence of the jury. This is a question of law that we review de novo. See *People v Tracey*, 221 Mich App 321, 323-324; 561 NW2d 133 (1997).

Before the prosecutor called Hornes to testify, Hornes' attorney advised the trial court that Hornes was "prepared to testify" and "to waive any Fifth Amendment rights." Upon testifying, to the prosecutor's evident surprise, Hornes did not implicate

defendant as a participant in an armed robbery, but rather provided an account of a sale of fake drugs to Doan. When the prosecutor asked Hornes if his previous testimony had been "a lie," defense counsel objected. Following a bench conference, the trial court advised Hornes of his right against self-incrimination. Hornes' attorney asked the trial court to ensure that Hornes was aware that the prosecutor could charge him with perjury if his testimony at defendant's trial contradicted his earlier testimony, and the court did so. At this point, court was recessed so that Hornes could confer with his attorney.[8] Thus, the jury apparently was present when the

---

[8] At the conclusion of the bench conference, the following exchange occurred between the trial court, Hornes, and Hornes' attorney, Mr. Sammis:

*The Court*: Mr. Hornes, I think we're at a stage where—well, you talked to Attorney Sammis earlier about your testimony, about your rights, about your Fifth Amendment rights, et cetera. Right?

*The Witness*: Yes.

*The Court*: All right. I'm going to advise you again of what those rights are, just so that we're all certain where we are on this. Okay?

*The Witness*: Yes.

*The Court*: You understand that you have a right to remain silent, not—make any statements concerning your involvement or anything else that might incriminate you in any kind of criminal activity. You understand that?

*The Witness*: Yes.

*The Court*: You understand that if you do make statements, any statements you make, the information can be used against you. You understand that?

*The Witness*: Yes.

*The Court*: All right. And you have the right to be represented by an attorney. You have the right to have your attorney present during any questioning that's being conducted. Do you understand that?

*The Witness*: Yes.

*The Court*: You have a right to—to stop any questioning, whether it's under oath on the witness stand or otherwise, if you choose to not answer questions any further. You understand that?

trial court informed Hornes of his Fifth Amendment rights.

Defendant, relying on *People v Giacalone*, 399 Mich 642; 250 NW2d 492 (1977), argues that he was denied a fair trial when the trial court advised Hornes of his Fifth Amendment rights in the presence of the jury. In *Giacalone*, the Supreme Court held that a lawyer may not call a witness knowing that he will claim a valid privilege not to testify.[9] *Id.* at 645. The Court explained that when an alleged accomplice invokes the privilege, the jury may treat the claim of privilege as a confession of crime. *Id.* However, we find *Giacalone* to be inapposite for two reasons. First, the prosecutor was clearly taken by surprise when Hornes' testimony differed from his testimony at his plea proceeding. Second, Hornes did not assert his

---

*The Witness*: So in other words, you're saying if I'm up here and somebody asks me a question, I ain't got to answer?

*The Court*: That's basically—

*Mr. Sammis*: If his—if his answers are going to incriminate him.

*The Court*: That's right. If they're going—if they're going to incriminate you in criminal activity, then you—

*Mr. Sammis*: If—if I could, your Honor, I think it's important that Mr. Hornes know at this point that—I mean, there's a possible perjury situation here and that is, you know, answers that in—that are in contradiction to what was placed on the record under oath, and it was actually a week ago last Friday, could result in possible perjury charges. 'Cause that's what I want Mr. Hornes to know.

*The Court*: Are you aware of that, Mr. Hornes?

*The Witness*: Yes.

At this point, court was recessed so that Hornes could consult with his attorney.

[9] The Supreme Court has recently reaffirmed that it is error for a prosecutor to call a witness intimately connected to the crime at issue, knowing that the witness will assert his Fifth Amendment rights. See *People v Gearns*, 457 Mich 170, 203 (BRICKLEY, J.), 221-222 (CAVANAGH, J.); 577 NW2d 422 (1998).

privilege against self-incrimination, but rather continued to testify.

The parties have not cited, and our research has not uncovered, any Michigan case where, in the presence of the jury, a witness was advised of his Fifth Amendment rights and nevertheless elected to continue testifying. However, Michigan courts have stated that if a trial court finds that it is necessary to inform a witness of his Fifth Amendment rights, the court should do so out of the presence of the jury. See *People v Dyer*, 425 Mich 572, 578, n 5; 390 NW2d 645 (1986); *People v Clark*, 172 Mich App 407, 416; 432 NW2d 726 (1988); *People v Callington*, 123 Mich App 301, 307; 333 NW2d 260 (1983).

In *Callington*, the defense called to the stand its sole corroborating witness. The prosecutor immediately requested the trial court to advise the witness of his Fifth Amendment  rights because, by testifying, the witness would be admitting to a probation violation that would subject him to prison. The trial court spoke with the witness' probation officer in the presence of counsel and ascertained that his testimony could lead to a finding that he violated his probation. The court informed the witness of this fact and engaged in a lengthy discussion of the witness' rights under the Fifth Amendment. The witness then indicated that he wished to exercise his Fifth Amendment rights and was excused by the court. *Id.* at 302-304. This Court reversed the defendant's convictions, concluding that "the court's warnings were unduly emphasized to the point where they were transformed into instruments of intimidation." *Id.* at 306. It is not clear from this Court's opinion in *Callington* whether the jury was present when the court advised the wit-

ness of his rights. However, in setting forth the proper procedure to be used when the prosecutor notifies the court that it may be necessary for the witness to be informed of his rights under the Fifth Amendment, the *Callington* panel stated that, when the court determines that it is appropriate, "the court shall inform the witness of his rights under the Fifth Amendment on the record out of the presence of the jury . . . ." *Id.* at 307.

In *Dyer, supra,* the defendant was charged with carrying a concealed weapon, MCL 750.227; MSA 28.424. The prosecutor stated that if the witness in question testified that the gun at issue was his, and the jury believed him, then charges would be brought against the witness. The Supreme Court noted that, at the time the prosecutor made this comment, the court had already appointed counsel for the witness who had advised the witness not to testify. *Dyer, supra* at 578, n 5. Otherwise, the prosecutor's comment may have constituted intimidation of the witness, necessitating reversal of the defendant's conviction. *Id.* The Court, citing *Callington,* stated in dicta that if the trial court concludes that it is necessary to inform a witness of his Fifth Amendment rights, the proper procedure is for the court to do so out of the presence of the jury. *Dyer, supra.*

However, a trial court's failure to have the jury removed before advising a witness of his Fifth Amendment  rights does not automatically require reversal of the defendant's conviction. In *Clark, supra,* the defense counsel recalled a prosecution witness and asked her if her previous testimony had been "'only partly true.'" *Clark, supra* at 415. The trial court then, with the jury present, reminded the wit-

ness of her privilege against self-incrimination. After
defense counsel asked an additional question, the wit-
ness indicated that she did not want to answer on the
basis of her Fifth Amendment privilege. *Id.* While not-
ing that, as a general rule, a witness should be
advised of her Fifth Amendment rights out of the
jury's presence, the *Clark* Court concluded that the
failure to do so in that case did not warrant reversal
of the defendant's convictions. The Court explained
that there was no indication that the prosecutor or
the court had attempted to dissuade the witness from
testifying, and the trial court's action had been precip-
itated by defense counsel's essentially asking the wit-
ness if she had perjured herself the previous day. *Id.*
at 415-416.

After considering the cases cited, we conclude that
the trial court erred in advising Hornes of his Fifth
Amendment rights in the presence of the jury. How-
ever, defendant did not object to the court's action
below.[10] A plain, unpreserved error may not be con-
sidered by an appellate court for the first time on
appeal unless the error could have been decisive of
the outcome or unless it falls under the category of
errors where prejudice is presumed or reversal is
automatic. *People v Grant*, 445 Mich 535, 553; 520
NW2d 123 (1994).

Neither the *Callington* panel nor the Supreme
Court discussed the rationale for the requirement that
a court advise a witness of his Fifth Amendment

---

[10] When the prosecutor asked Hornes if he had lied at his plea proceed-
ing, defense counsel requested a bench conference. Immediately after the
bench conference, which lasted approximately four minutes, the trial
court advised Hornes of his rights. Thus, it is possible that defense coun-
sel endorsed the trial court's action.

rights outside the presence of the jury. In concluding that the trial court's failure to remove the jury before instructing the witness regarding her privilege against self-incrimination was harmless error, the *Clark* panel noted that "the danger of witness intimidation sought to be eliminated by the rule did not exist in this case." *Clark, supra* at 416. We believe, however, that the danger of witness intimidation is addressed by the requirement that the court, rather than the prosecutor, provide the explanation of the witness' constitutional rights.[11] See *United States v Smith*, 156 US App DC 66, 69; 478 F2d 976 (1973). From the perspective of the witness, as long as the court's comments do not rise to the level of threats, it is immaterial whether the discussion of his constitutional rights takes place in the presence or absence of the jury. In our opinion, the purpose of the requirement is to ensure that the jury does not assume that the witness is less credible than the witnesses who were not informed of their rights. Just as no inferences should be drawn from a witness' exercise of his Fifth Amendment right not to testify, *Dyer, supra* at 579,

---

[11] Of course, error may occur if the court does not advise the witness of his rights in a fair and reasonable manner, but rather threatens the witness with punitive consequences for giving perjured testimony or otherwise discourages the witness from testifying. See *Callington, supra*; see also *People v Siegel*, 87 NY2d 536, 543; 663 NE2d 872; 640 NYS2d 831 (1995). As the Second Circuit Court of Appeals has explained,

> a . . . court certainly has the discretion to ensure that a witness in danger of unwittingly incriminating himself is aware of his constitutional privilege [not to testify], but that exercise of this discretion must be carefully tailored to ensure that warnings do not become threats. A . . . judge warning a witness must be sure that she does not abuse that discretion by intimidating a witness into silence. [*United States v Valdez*, 16 F3d 1324, 1331 (CA 2, 1994).]

no inferences should be drawn from the court's advising the witness of that right.[12]

After carefully reviewing the record in the instant case, we conclude that the trial court's error is not grounds for reversal of defendant's convictions. First, while Hornes was the only witness who was advised of his rights, he was also the only witness who admitted that he had given inconsistent testimony at a prior proceeding. By advising Hornes of his constitutional rights, the court merely highlighted the obvious fact that Hornes' testimony at his plea proceeding and his testimony at trial could not both be true. Moreover, contrary to defendant's argument, the trial court's remarks did not intimate that Hornes' testimony at trial was untruthful. The court simply provided a fair and well-balanced explanation to Hornes of his rights and the possible consequences of continuing to testify.[13] Finally, the trial court's comments did not deter Hornes from providing testimony favorable to defendant. The fact that Hornes was advised in the presence of the jury that he could be charged with perjury for providing testimony that was inconsistent with his

---

[12] The Connecticut Court of Appeals has held that it is not error for the trial court to advise a witness of her Fifth Amendment rights in the presence of the jury. The court explained:

> [O]n the basis of the evidence presented at the trial, the court simply anticipated the possibility that the witness, who was not represented by counsel, might be entitled to assert her fifth amendment privilege against self-incrimination. The court took reasonable steps to inform the witness of her rights and to give her a meaningful opportunity to exercise them if she chose. We do not think this solicitousness on the part of the court with regard to the witness' constitutional rights caused the witness' credibility to be compromised before the jury. [*State v Person*, 20 Conn App 115, 135; 564 A2d 626 (1989), aff'd 215 Conn 653; 577 A2d 1036 (1990).]

[13] See n 8, *supra*.

previous testimony may well have bolstered his credibility by alerting the jury that he was testifying at substantial personal risk. Under the circumstances, we conclude that the error could not have been decisive of the outcome, and therefore reversal of defendant's convictions is not warranted. See *Grant, supra.*

v

Defendant next argues that his sentence for the felonious assault conviction is disproportionate. A trial court's imposition of a particular sentence is reviewed on appeal for an abuse of discretion, which will be found where the sentence imposed does not reasonably reflect the seriousness of the circumstances surrounding the offense and the offender. *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990).

Defendant claims that the trial court inappropriately emphasized the type of weapon used in the crime. We disagree. Officer Neal testified at trial that if the assault rifle had been fired as he had found it, the live round it contained would have gone through a refrigerator. The trial court did not err in considering the lethal nature of the weapon used by defendant. See *People v Hunter*, 176 Mich App 319, 321; 439 NW2d 334 (1989) (stating that a sentencing court may "consider the nature and severity of the crime committed").

Defendant also maintains that the trial court should have considered the weapon only with respect to defendant's felony-firearm conviction. Again, we disagree. The use of a dangerous weapon is an element of felonious assault. See *Davis, supra.* That defendant was also convicted of felony-firearm does not make it

inappropriate for the trial court to take into account in sentencing for the felonious assault conviction the type of weapon used.

Defendant's remaining allegations regarding his sentence are likewise without merit. Although defendant contends that the trial court failed to tailor the sentence to his circumstances, he does not indicate what information the trial court should have considered and did not. Furthermore, there is nothing in the record to support defendant's contention that the trial court improperly considered his refusal to admit his guilt. See *People v Draper*, 150 Mich App 481, 489; 389 NW2d 89 (1986), remanded on other grounds 437 Mich 873 (1990).

We conclude that defendant's sentence is proportionate to the seriousness of the circumstances surrounding the offense and the offender. See *Milbourn, supra*. Furthermore, a trial court does not abuse its discretion in giving a sentence within the statutory limits established by the Legislature when an habitual offender's underlying felony, in the context of his previous felonies, evidences that the defendant has an inability to conform his conduct to the laws of society. *People v Hansford (After Remand)*, 454 Mich 320, 326; 562 NW2d 460 (1997).

VI

Finally, we note that the judgment of sentence incorrectly states that defendant was convicted of assault with intent to commit a felony not otherwise punished, MCL 750.87; MSA 28.282, rather than the actual conviction of felonious assault. We therefore remand for the limited purpose of correcting the judgment of sentence.

Defendant's convictions and sentences are affirmed. However, we remand for the ministerial task of correcting the judgment of sentence. We do not retain jurisdiction.