*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SILVIA MARIA MEYRELLE-MARTINEZ,

        Defendant-Appellant

UNPUBLISHED
March 4, 2021

No. 348586
Wayne Circuit Court
LC No. 17-010620-01-FH

Before: GLEICHER, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

A jury convicted Silvia Maria Meyrelle-Martinez of assault with a dangerous weapon (felonious assault) and possession of a firearm during the commission of a felony (felony-firearm). Martinez's appellate arguments center on the circumstances surrounding a rejected plea offer, and the manner in which the jury was instructed.

Martinez is entitled to a new trial based on instructional errors. However, a transcript that emerged only after a completed *Ginther* hearing requires us to reopen the hearing for an initial determination of whether Martinez is entitled to the alternative relief of reinstatement of her plea offer. Accordingly, we vacate Martinez's convictions and sentences and remand to the trial court for further development of the record. If reinstatement of the plea offer is also warranted, Martinez will be required to choose whether to enter a plea or proceed to a new trial.

## I. BACKGROUND

This case involves a dispute between Martinez and a family member to whom she rented a room—Jessica Kasper, the mother of Martinez's nephews. The trial was a credibility contest. Kasper contended that in the short time she and her sons had lived in the home, the women had experienced no troubles. Martinez rejoined that Kasper often left her children unsupervised and that they had made holes in the home's drywall. Kasper asserted that the argument on the day in question arose because she believed Martinez accidentally took some of her "Christmas items" from a closet. Martinez then accused Kasper of stealing her remote control. Martinez described that Kasper falsely accused her of stealing and threw away Martinez's remote control in revenge.

-1-

The women ended up in Martinez's bedroom in search of the allegedly missing items. Kasper testified that Martinez pulled a gun from somewhere and pointed it at her. According to Kasper, she tried to wrestle the gun away from Martinez. Martinez slapped her across the face, and bit her on the wrist and shoulder. Martinez fell onto the bed during the scuffle. Martinez, on the other hand, painted Kasper as the initial aggressor. Counsel elicited testimony that Kasper is twice Martinez's size and half her age. Martinez has mobility issues related to arthritis, osteoporosis, and spinal cord deterioration. Martinez asserted that she pulled her handgun from under her pillow only after Kasper pushed her onto the bed and laid on top of her, impeding her ability to breath. Martinez testified that Kasper left bruises on her arms from holding her down and broke her finger while taking the gun from her. Kasper took the gun to her upstairs bedroom and both women called 911.

Ultimately, the jury credited Kasper's testimony and convicted Martinez of felonious assault and felony-firearm.

## II. PLEA OFFER

### A

Martinez contends that her trial attorney, James Anderson, failed to adequately explain to her a plea offer made by the prosecution early in the proceedings. At the February 27, 2018 final conference, the parties agreed that Anderson would "write a letter to the Gun Board" before finalizing plea negotiations.[1] The proceedings reconvened on March 13, but the gun board had yet to meet. Accordingly, the matter was adjourned until March 15.

A hearing was held on March 15, 2018, and Anderson subsequently requested production of the transcript. The court reporter advised that she had no notes from the hearing. Represented by different counsel, Martinez filed her claim of appeal, initial appellate brief and motion to remand without the benefit of this transcript. We granted Martinez's motion to remand for a *Ginther*[2] hearing. *People v Meyrelle-Martinez*, unpublished order of the Court of Appeals, entered January 24, 2020 (Docket No. 348586). As the trial had been conducted before a visiting judge, the matter was reassigned on remand.

Relative to the plea offer, Anderson testified as follows at the *Ginther* hearing:

> *Q*. Okay. And, um, have you received a Gun Board response when you came back to court?
>
> *A*. I believe the response was an offer that involved, um, getting rid of the felony firearm charge, and, uh, with an offer including probation.

---

[1] The court later explained "for clarification for Court of Appeals purposes," that the gun board "is a group of senior assistant prosecuting attorneys" who review requests from defendants charged with firearm crimes for reduced plea or sentencing agreements.

[2] *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).

*Q*. Okay. And, um, did you convey that offer?

*A*. Yes, I did.

*Q*. Do you recall when you conveyed it?

*A*. It would have been on that date where apparently, um - - when the offer was made, but apparently there was no transcript of the hearing on that day.

*Q*. Okay. And, um, do you recall where you would've conveyed that offer to Ms. Martinez?

*A*. It would've been probably in the court. Um, in the hallway area.

*Q*. Okay. Um, at any time did you ever explain to Ms. Martinez that she was facing two years mandatory prison time if she was convicted at trial in this case?

*A*. Certainly I recall having a conversation with her explaining to her the mandatory nature of the felony firearm charge. And, uh, I told her that it was like gambling. You can go to a casino and gamble or you can take the offer which is a sure thing regarding probation. I believe she indicated to me that she didn't do anything wrong. It was in self-defense and she wanted to have a trial.

*Q*. Okay. And now was that discussion about the mandatory nature of the sentence for felony firearm, was that at the same time that you conveyed the offer or was that at another time?

*A*. That was the same time I conveyed the offer and the last, uh, court date we had prior to the trial.

*Q*. Okay. Um, so, [Martinez's] response was something to the effect of why should I take a plea if I did nothing wrong?

\*   \*   \*

*A*. She said I was defending myself. I didn't do anything wrong.

*Q*. And is it possible that, that you just responded that you're right, we're going to jury trial without discussing the possible bad . . . outcomes.

*A*. Probably not. And as a general rule what I do is on the last day before trial, if I feel that the offer was a good offer that the client might want to take, I ask to voir dire, uh, my client and ask them did they understand what the offer is and notwithstanding the offer do they still wanna go to trial, and then they respond. And it's my understanding that what happened on that date, that transcript has - - is not available.

-3-

*Q.* Okay. So you believe you would've had her sworn in in court around [sic] voir dired about the offer?

*A.* Absolutely.

*Q.* Okay. And you understood that Ms. Martinez did not have a prior criminal record and certainly didn't have any prior felony firearms, correct?

*A.* Absolutely.

*Q.* So she wouldn't have come to you with the knowledge of the penalty for that?

*A.* I wouldn't expect that she would have.

*Q.* Okay. Um, and it's your position that she fully understood the value of that offer when you conveyed it to her?

*A.* I believe she did.

Following remand, this Court reinitiated a search for the March 15, 2018 transcript. On January 22, 2021, the court reporter found her notes and produced a six-page transcript. That transcript reveals that the court began the hearing by reciting that Martinez had been charged with felonious assault, "a four year felony," felony-firearm, "a mandatory two year consecutive" sentence. The court discussed with Martinez the correct spelling of her name. The prosecutor then stated, "Your Honor, there is an offer on the table right now to dismiss Count 2, the felony firearm, with a plea on Count 1 [felonious assault], with restitution and no contact with the complainant." He continued, "And there may actually be a deal even sweeter than this one. But as of right now, I'm not authorized to extend that . . . ." The proposed sentence connected with this offer was not mentioned on the record. The proceeding concluded with Martinez rejecting the offer as follows:

*The Court.* Mr. Anderson, are you in receipt of that offer from the People?

*Mr. Anderson.* I'm in receipt of the offer. I have discussed it with my client. It is rejected and we'll proceed to trial on the 11th.

*The Court.* All right. [Martinez], you have heard the offer and you do reject it, is that correct?

*[Martinez].* Yes.

*The Court.* Okay. Very good. We'll see you all back her[e] on April 11th at 9:00.

This transcript meaningfully contradicts Anderson's *Ginther* hearing testimony that he asked the court to place Martinez under oath to ensure that she understood the terms and benefits of the plea offer.

-4-

Again, without the benefit of the March 15, 2018 transcript, the court on remand denied Martinez's motion to reinstate the plea offer on ineffective assistance of counsel grounds. Specifically, the court found that Anderson secured "a very favorable offer from the Gun Board." "While [Martinez] is adamant she was not told about the mandatory nature of the felony firearm sentence, her testimony at the [*Ginther*] hearing was incredible and unconvincing." Martinez admitted that she met with Anderson "on approximately ten occasions prior to . . . trial," making it "very difficult to believe" that Anderson did not explain the maximum sentences connected to the charges. "[M]ost telling" was Martinez's testimony that after Anderson told her about the plea offer, she responded, "why should I take a felony when I don't have a crime."

B

"A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Unger*, 278 Mich App 210, 243; 749 NW2d 272 (2008). Following a *Ginther* hearing, we review the circuit court's factual findings for clear error and legal and constitutional conclusions de novo. *Id*. A claim of ineffective assistance of counsel includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish that counsel's performance was deficient, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). To establish prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have differed. *Id*. at 663-664.

Defense counsel's failure to accurately advise a defendant of the consequences of rejecting a plea offer may constitute deficient performance. *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014). A defendant may be prejudiced by trial counsel's failure to advise her of a possible sentence when exercising her right to trial. *Lafler v Cooper*, 566 US 156, 166; 132 S Ct 1376; 182 L Ed 2d 398 (2012). If a defendant was in fact not advised of the consequences of rejecting a plea offer, she may establish prejudice by showing that "but for counsel's deficient performance there is a reasonable probability [s]he and the trial court would have accepted the guilty plea." *Id*. at 174.

We cannot defer to the remand court's factual findings following the *Ginther* hearing in this case. The remand judge did not have the benefit of the transcript relevant to the plea issue. The March 15, 2018 transcript proves that the sentencing portion of the plea offer was not placed on the record. Moreover, the court's recitation of the sentences connected to the charged offenses does not make clear that felony-firearm comes with a mandatory prison sentence, only that a sentence imposed for that offense would be consecutive to a term of imprisonment for felonious assault. Anderson did not ask the court to place Martinez under oath. He did not outline the terms of the plea agreement on the record and inquire whether Martinez understood those terms before rejecting the plea and exercising her right to trial.

Given the belated production of the March 15, 2018 transcript, the parties were unable to adequately prepare for the *Ginther* hearing and address the questions presented. Continuation of that hearing is required to further develop the record with the benefit of this vital information.

Only with the benefit of further testimony can the trial court make an initial determination of whether Anderson's performance fell below constitutional standards.

We note, however, that to merit relief, Martinez must also establish a reasonable probability that she would have accepted the plea agreement had Anderson more thoroughly explained the offer and the consequences of going to trial to her. At the *Ginther* hearing, Martinez testified, "[Anderson] said that the Gun Board had said, uh, that they would offer the plea bargain. And all I said to him was why should I take a felony when I don't have a crime. And he goes that's right, we're gonna take it to jury." When asked, "Did he say sit down and say this is what might happen if we go to trial and this is why this is a better deal?," Martinez responded, "No, he didn't. I didn't - - I don't recall him saying anything like that. Um, um, he just said that I would keep in touch with him." Martinez claimed that Anderson was otherwise an "attentive attorney" but she "just [was not] given any explanation of why this would be a good deal."

The remand court found this testimony incredible. But again, the court credited Anderson's testimony over Martinez's without the benefit of the March 15, 2018 transcript that contradicted Anderson's remand hearing testimony. This issue must also be readdressed following further testimony at a continued *Ginther* hearing.

We further note that it appears that Martinez has already served her two-year term of imprisonment for her felony-firearm conviction. On remand, the court can explore the remedies available under these circumstances.

### III. JURY INSTRUCTIONS

This does not end our inquiry, however. Martinez also contends that the trial court denied her right to a fair trial through three errors in instructing the jury, and that Anderson was constitutionally ineffective in failing to make stronger arguments in support of the subject instructions. If correct, Martinez would also be entitled to a new trial, and may take this option over accepting the reinstated plea bargain.

### A

At the beginning of the second day of trial, the parties and the court discussed the instructions that would be read to the jury. Anderson asserted that he was requesting instructions on "[s]elf-defense and maybe a lesser included." The court found an absence of deadly force and declined to give the self-defense instruction under Mich Crim JI 7.15. The court also declined to read the instruction on the no-duty-to-retreat rule: "No duty to retreat while in known [sic] dwelling, but that really doesn't apply. It's both their dwellings." Anderson queried, "It doesn't matter whether or not one person is a renter?" The court answered in the negative, and defense counsel responded, "Okay." The court determined to read Mich Crim JI 7.22 regarding self-defense involving nondeadly force.

Anderson then requested an instruction on a lesser included offense, specifically "an A & B instruction." The court rejected this instruction, stating, "I don't give misdemeanor instructions in felony trials." Anderson asked incredulously, "You don't?" And the court replied, "No. It's - - it's actually the first prong of the test for lesser includeds, but I don't give them. Sorry." Upon further inquiry from the prosecutor, the court reiterated, "I know what he's asking. I don't do it."

Finally, during deliberations, the jury sent out a note, asking, "A person who forcefully or violently touches another in self-defense, is it considered battery if it is done in self-defense?" The court opined that it could not answer the question "without invading the province of the jury." The prosecution agreed with the court. Anderson noted that the question was "a bit confusing," and asserted, "usually if it's confusing, it's best not to respond." The court brought the jury back into the courtroom and advised that it could not answer the question without invading the jury's role. Forty minutes later, the jury returned a verdict of guilty as charged.

Three months after Martinez's conviction, Anderson filed a motion for a new trial or directed verdict of acquittal. Anderson contended that Martinez was entitled to a new trial before a properly instructed jury—one instructed that Martinez had no duty to retreat in her own home and was therefore justified in using nondeadly force against Kasper. Martinez did not challenge the trial court's failure to give a lesser included offense instruction or to more adequately guide the jury during deliberations. The court found the instructions satisfactory as given and denied the motion.

B

At the *Ginther* hearing, Martinez's appellate counsel elicited testimony from Anderson regarding his failure to more forcefully push for no-duty-to-retreat and lesser included offense instructions. Anderson testified that he preserved Martinez's appellate challenges by requesting the instructions, and did not pursue the instructions further based on the court's response. Instead, Anderson expressed satisfaction with the instructions and filed a postconviction motion for relief. In relation to the mid-deliberations jury question regarding the self-defense instruction, Anderson agreed that neither the court nor the prosecutor wanted to answer the question. Appellate defense counsel queried, "And is it true that you did not offer any solution but allowed the court to not answer the question?" Anderson replied, "Well, I don't know that I can force the court to do anything, but I did not, um, speak out and make a suggestion to the court as to how the court should address the question." Anderson agreed that rereading the instruction would have clarified the issue for the jury, and that the jury was likely left confused by the lack of an answer. Anderson did not insist on rereading the instruction because he did not "think of it" and he did not think it would sway the judge.

The remand court determined that the trial court might have erred, but the court's conduct was not at issue in the remand order. Anderson did request lesser included offense and no-duty-to-retreat instructions and lost. Accordingly, the remand court found that Anderson could not be deemed ineffective. Finally, the remand court determined that even if Anderson was ineffective in failing to ask the court to reread the self-defense instruction, the error was not outcome determinative. If the jury did not understand the instruction, rereading it could be of no help.

C

Martinez continues to challenge both the trial court's instructions and Anderson's performance.

We review jury instructions in their entirety to determine if error requiring reversal occurred. The instructions must not be extracted piecemeal to establish

error. Even if the instructions are somewhat imperfect, reversal is not required as long as they fairly presented the issues to be tried and sufficiently protected the defendant's rights. [*People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001).]

We review de novo questions of law involving jury instructions, but review for an abuse of discretion the trial court's determination whether a jury instruction is applicable to the facts of the case. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). "[I]f an applicable instruction was not given, the defendant bears the burden of establishing that the trial court's failure to give the requested instruction resulted in a miscarriage of justice." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002), citing MCL 769.26.

The trial court erred in denying Martinez's request for an instruction regarding the no-duty-to-retreat rule in relation to the self-defense instruction. The trial court determined that an instruction regarding the use of nondeadly, rather than deadly, force in self-defense was warranted. Mich Crim JI 7.16 applies under either scenario. That instruction provides that "[a] person can use [force/deadly force] in self-defense only where it is necessary to do so." *Id.* The instruction continues that "a person is never required to retreat if attacked in [his/her] own home . . . ." *Id.* Contrary to the trial court's ruling, a person is entitled to use force in self-defense and not retreat in their own home, even against someone who lives in the same home. *People v Lenkevich*, 394 Mich 117, 121-122; 229 NW2d 298 (1975). This instruction was relevant and supported by the evidence presented at trial. Specifically, Martinez testified that Kasper was the aggressor, backed her onto Martinez's bed, and sat on her so she could not move or breath. Moreover, Martinez is twice Kasper's age, half her size, and suffers from debilitating health issues. The court should have given the requested instruction.

The self-defense instruction as given did not fairly present the issues and adequately protect Martinez's rights. Although it was undisputed that Martinez pointed a gun at Kasper, it was a credibility contest regarding when and why. Had the jury been informed that Martinez had a right to stand her ground in addition to a right to use force, there is a reasonable likelihood that the jury would have reached a different verdict. The court's failure to give the requested instruction denied Martinez a fair trial. We therefore need not decide whether Anderson was ineffective in failing to make further argument in this regard.

The court did not err in denying Martinez's request for a lesser included offense instruction. A trial court's failure to instruct on an applicable lesser-included offense is grounds for reversal "if, after reviewing the entire cause, the reviewing court is satisfied that the evidence presented at trial 'clearly' supported the lesser included instruction." *People v Silver*, 466 Mich 386, 388; 646 NW2d 150 (2002). The undisputed evidence in this case established that Martinez brandished a weapon. An instruction on an offense that does not include possession or use of a firearm was not justified.

"The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). Assault and battery does not require use of a dangerous weapon. "A simple assault is either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery.

A battery [simply] is the consummation of an assault." *People v Terry*, 217 Mich App 660, 662; 553 NW2d 23 (1996). The undisputed use of a firearm in this case means that the lesser included offense instruction was not supported by the evidence. We can find no error in the court's ruling. And counsel cannot be deemed ineffective for pursuing this meritless position. *People v Erickson*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

In relation to Martinez's final instructional challenge, we agree that the trial court should have at least reread the self-defense instruction to the jury and that Anderson should have requested that the court do so. As noted, the jury submitted the following question during deliberations: "A person who forcefully or violently touches another in self-defense, is it considered battery if it is done in self-defense?" This question revealed a fundamental failure to understand that self-defense was a complete defense to the felonious assault charge. A jury that completely misunderstood the only defense presented could not fairly deliberate the issues.

The most basic answer to this question would have been to reread Mich Crim JI 7.22(1), which provides, "If a person acts in lawful [self-defense], [her] actions are justified and [she] is not guilty of [felonious assault]." To further clarify the issue, the court could have also reread the elements of the felonious assault charge. Instead, the court responded that it could not invade the province of the jury, an answer that was likely meaningless to the jury of lay persons. This error too denied Martinez a fair trial.

## IV. CONCLUSION

Given the trial court's prejudicial instructional errors, Martinez is entitled to a new trial. However, as previously noted, Martinez may also be entitled to alternative relief—reinstatement of the plea offer.

We vacate Martinez's convictions and sentences and remand for further development of the record at a continued *Ginther* hearing. If the trial court determines that reinstatement of the plea offer is warranted, Martinez will be required to choose between entering a plea or proceeding to a new trial. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly

-9-