*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 14, 2023

Plaintiff-Appellee,

v

No. 361363
Chippewa Circuit Court
LC No. 20-005064-FH

STEVEN SHAUN ALEXANDER,

Defendant-Appellant.

Before: GLEICHER, C.J., and JANSEN and RICK, JJ.

PER CURIAM.

The trial court convicted Steven Shaun Alexander of tampering with an electronic monitoring device in violation of MCL 771.3f following a brief bench trial. Alexander contends that the prosecution presented insufficient evidence that he knowingly interfered with his tether. The record evidence suffices to support the conviction, and we affirm.

## I. BACKGROUND

Alexander had been placed on house arrest and ordered to wear an electronic monitoring device (an ankle tether) as a condition of his parole for an earlier offense. When Alexander was given the tether, he signed an agreement providing, "I will not knowingly fail to charge, remove, destroy, damage, . . . tamper or circumvent the operation of the electronic monitoring equipment." The agreement further provided that Alexander could only remove the tether on instruction from the Michigan Department of Corrections. As described at trial, the "tether unit" is separate from the strap. There are "pins" protruding from the strap that clip into the tether.

On July 2, 2020, Alexander's parole agent, Nathan Marra, received an electronic "strap alert." Marra described, "A strap alert is the band on the tether is a fiberoptic line that runs through the rubber, and when it pulls away from the tether unit, it breaks the circuit and creates a strap alert." The alert "cleared," meaning that there had been a temporary interruption in the connection or a "blip."

Around midnight on July 3, Agent Marra received a second strap alert. This one did not clear. That morning, Marra drove to Alexander's house to execute a wellness check and to

-1-

investigate the strap alert. Marra telephoned Alexander when he arrived and asked him to come outside. Alexander "mumbled something and hung up the phone." Marra called Alexander several more times, but he did not answer. Marra checked his computer and discovered that Alexander's tether was active and inside the home. Knowing Alexander's history of drug abuse, Marra was concerned that Alexander had overdosed inside the house. Marra unsuccessfully attempted to contact Alexander's father for assistance.

Unable to reach Alexander or his father, Agent Marra requested assistance from Parole Agent Artisha Volz and the Sault Ste. Marie Police Department. The two parole agents and responding officers entered Alexander's home. During the search, they found Alexander's tether plugged into a wall outlet on the upstairs deck. The strap and tether were completely connected "as if it were to be hooked up on a leg." Upon close inspection, Agent Marra discovered that one of the pins that held the tether to the strap was "damaged." The search party did not find Alexander in the home. They did, however, encounter Alexander's two dogs. Agent Marra took the tether with him when the officers left. At some point, Alexander texted Marra, asking "Now what?"

On cross-examination, Agent Marra described the ways in which a tether might accidentally fall off and the types of defects a tether could have. However, he clarified that "It takes a lot of force" to knock a tether off by accident. Marra's supervisor testified that it requires "88 pounds of force to break" the pin.

Officers arrested Alexander three days later away from his home and, obviously, without his tether.

At trial, Alexander testified that when the officers were searching his home, he was in a living space above the detached garage, asleep. He specifically testified that his glasses and cell phone were on the bedside table. And he insisted that no one came into the room to look for him. Alexander claimed that he did not mumble and hang up when Agent Marra called him on July 3. Rather, he claimed his cell phone died. Alexander also provided a long and confusing explanation of how his tether may have come off, including that it was wet from washing his truck, the tether caught on a board as he was ascending a staircase, and that he had difficulty charging the unit while he walked around his property. Alexander admitted that he received a call from the Lansing monitoring station about the alert on his tether. He claimed that the agent hung up before he could explain that the tether was no longer on his body.

The prosecutor recalled Agent Marra as a rebuttal witness after Alexander testified. Marra testified that he was aware of the living space above the detached garage and that he searched that area on July 3. Marra asserted that Alexander was not there and neither his glasses nor cell phone were on the bedside table.

The trial court convicted Alexander as charged. The court found Alexander's explanation of how the tether came off "implausible." The court credited the officers' testimony that they found the tether but not Alexander in the home. Further, the court noted that Alexander was well aware that he was required to remain in his home and could not remove his tether without permission. The court concluded that Alexander purposely "positioned the tether" so it would appear that he was inside the home. The facts "would suggest, if nobody checked, that Mr.

Alexander was still there, and it was affixed to his leg because the GPS would have remained at the house; albeit not with Mr. Alexander's leg attached to it."

## II. SUFFICIENCY OF THE EVIDENCE

Alexander raises a single challenge on appeal: that the prosecution failed to present sufficient evidence that he knowingly removed his tether. We review de novo challenges to the sufficiency of the evidence, considering the evidence "in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009). In doing so, we "must defer to the fact-finder by drawing all reasonable inferences and resolving credibility conflicts in support of the . . . verdict." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007).

MCL 771.3f(1) provides in relevant part that "[a] person shall not *knowingly* and without authority remove, destroy, or circumvent the operation of an electronic monitoring device . . . worn or otherwise used by an individual as a condition" of parole. Alexander concedes that he removed his tether, but claims he did so accidentally, not knowingly.

"[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). Questions of credibility and intent are best left to the trier of fact to resolve. *People v Avant*, 235 Mich App 499, 506; 597 NW2d 864 (1999).

The prosecution presented more than adequate evidence to support the trial court's verdict. Had Alexander's tether accidentally fallen off, he could have called Agent Marra. But he did not. Instead, Alexander configured the tether and strap as if it was still attached to his ankle and plugged it into the wall. The evidence clearly supports that Alexander was not in the home during the search, despite his testimony to the contrary. The officers were present for an hour, Alexander's dogs were barking, and Agent Marra searched the room above the attached garage where Alexander claimed to be asleep. Had Alexander been home, the officers would have found him or the noise would have roused him. Accordingly, the evidence supports that Alexander left his tether plugged into the wall to make it appear that he was home while he violated the terms of his house arrest. There is no ground to interfere with his verdict.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Michelle M. Rick