# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAVID WILSON,

        Defendant-Appellant.

UNPUBLISHED
June 22, 2017

No. 330333
Wayne Circuit Court
LC No. 13-001466-01-FC

Before: JANSEN, P.J., and MURPHY and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of assault with a dangerous weapon (felonious assault), MCL 750.82, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 58 months to 15 years for the felonious assault conviction and 76 months to 20 years for the felon-in-possession conviction, to be served consecutively to a five-year term of imprisonment for the felony-firearm conviction. We affirm.

Defendant's convictions arise from an altercation with the victim, a landlord, on January 29, 2013. The landlord was in the process of evicting defendant's niece from a home owned by the landlord in Detroit. The niece was being uncooperative, so the landlord called the police. Defendant confronted the landlord while the landlord was sitting in his car in front of the house, waiting for the police to arrive. After an argument, defendant opened the landlord's car door, the two men briefly struggled, and the landlord reached to close the car door. The landlord saw defendant reaching for something in his coat pocket, which he thought might be a gun, so he ducked as he began to drive away in his car. The landlord testified that he saw defendant remove a black object from his coat pocket, but admitted that he could not tell if the object was a gun. As the landlord started to drive away, he heard two gunshots coming from defendant's direction. He did not actually see defendant shoot, but he did not see anyone else outside at the time of the shooting and the circumstances led him to believe that the gunshots were fired by defendant. One bullet struck the landlord in the elbow. Defendant denied possessing a firearm and claimed that the black object he removed from his coat pocket was a cell phone. Defendant believed that the gunshots came from two different directions and were fired by two groups of people who were shooting at each other.

Defendant was originally charged with assault with intent to commit murder, MCL 750.83, assault with intent to do great bodily harm less than murder, MCL 750.84, felonious assault, felon in possession of a firearm, and felony-firearm. In October 2013, a jury convicted defendant of the felonious assault, felon-in-possession, and felony-firearm charges. In a prior appeal, this Court reversed defendant's convictions because he did not properly waive his right to counsel before representing himself at trial. *People v Wilson*, unpublished opinion per curiam of the Court of Appeals, issued March 24, 2015 (Docket No. 319418). Defendant was retried in October 2015, and a jury again convicted him of felonious assault, felon-in-possession, and felony-firearm.

## I. DEFENDANT'S BRIEF ON APPEAL

## A. SPEEDY TRIAL

Defendant argues that he was denied his constitutional right to a speedy trial. Whether defendant was denied his right to a speedy trial is a mixed question of fact and constitutional law. *People v Gilmore*, 222 Mich App 442, 459; 564 NW2d 158 (1997). Any factual findings by the trial court are reviewed for clear error, and questions of law are reviewed de novo. *Id*.

A defendant's right to a speedy trial is guaranteed by both the federal and state constitutions. US Const, Am VI; Const 1963, art 1, § 20; see also MCL 768.1; MCR 6.004(A). The time for judging whether a trial was timely runs from the date of the defendant's arrest, and a defendant's right to a speedy trial, in contrast to the 180-day rule, is not violated after a fixed number of days. *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). "In determining whether a defendant has been denied the right to a speedy trial, we balance the following four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Id*. at 261-262. Where there is a delay of at least 18 months, prejudice is presumed and the burden shifts to the prosecution to show that there was no injury to the defendant. *Id*. at 262. When the delay amounts to less than 18 months, the defendant must prove that he has suffered prejudice. *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013).

Defendant argues that the events that occurred before his first trial, combined with the delay preceding his second trial, support his argument that he was deprived of his right to a speedy trial. The prosecution contends that defendant cannot rely on delays that preceded his first trial and that his claim must be analyzed by looking only at events that occurred after this Court granted defendant a second trial. As further explained below, we conclude that defendant cannot rely on the period of "delay" related to his prior appeal and that consideration of the remaining periods preceding defendant's second trial do not support his claim that he was denied a speedy second trial.

Initially, our review of the record leads us to conclude that the prosecutor or the trial court was responsible for the period of time that elapsed between defendant's arrest and the previously scheduled trial date of July 16, 2013, due to the prosecutor's request for an adjournment. This amounts to a period of approximately 168 days. However, it was defendant who was responsible for the delay that occurred from July 16, 2013, until the start of his first trial

on October 10, 2013, because that delay was caused by the withdrawal of defendant's prior attorney, who withdrew due to a breakdown in her relationship with defendant.

Defendant's speedy trial claim rests largely on the period of time following defendant's first conviction on October 16, 2013, and the start of his second trial on October 5, 2015. We conclude that the period of time following defendant's first convictions and ending with the date of this Court's decision reversing those convictions may not be considered in analyzing defendant's speedy trial claim.

In *Betterman v Montana*, ___ US ___; 136 S Ct 1609, 1612; 194 L Ed 2d 723 (2016), the United States Supreme Court rejected the defendant's claim that a 14-month delay between conviction and sentencing violated his constitutional right to a speedy trial. The Court reasoned that, before conviction, an accused is shielded by the presumption of innocence, which the Speedy Trial Clause is designed to implement by " 'prevent[ing] undue and oppressive incarceration prior to trial, . . . minimiz[ing] anxiety and concern accompanying public accusation[,] and . . . limit[ing] the possibilities that long delay will impair the ability of an accused to defend himself.' " *Id.* at 1614, quoting *United States v Marion*, 404 US 307, 320; 92 S Ct 455; 30 L Ed 2d 468 (1971) (alterations and omissions in *Betterman*). The Court held that the Sixth Amendment right to a speedy trial "protects the accused from arrest or indictment through trial, but does not apply once a defendant has been found guilty at trial or has pleaded guilty to criminal charges." *Id.* at 1612. In other words, the right "detaches upon conviction[.]" *Id.* at 1613.

In *People v Den Uyl*, 320 Mich 477, 489-490; 31 NW2d 699 (1948), there had been an earlier unsuccessful appeal by the prosecution at the preliminary examination stage, and in analyzing the defendants' argument that the subsequent continuation of criminal proceedings against them violated their constitutional and statutory rights to a speedy trial, our Supreme Court observed:

> One of the circumstances which will constitute good cause for delay, again within reasonable limits of time, is the taking of an appeal, whether by the State or another party. The right of speedy trial should not operate to deprive the State of a reasonable opportunity of fairly prosecuting criminals.

In *People v Chism*, 390 Mich 104, 113; 211 NW2d 193 (1973), where the defendant had filed an earlier appeal, the Michigan Supreme Court, citing *Den Uyl*, 320 Mich at 489-490, stated that, although the defendant had a right to appeal, "time reasonably consumed on appeal cannot be considered as in derogation of a speedy trial."

Applying the rationale of *Betterman*, *Den Uyl*, and *Chism* to the instant case, it follows that the time period between defendant's first convictions on October 16, 2013, and March 24, 2015, the date this Court issued its decision reversing defendant's convictions and remanding for a new trial, which amounts to approximately 524 days, cannot be considered in analyzing

defendant's speedy trial claim.[1]  Defendant's speedy trial right detached upon conviction, and it did not reattach until this Court reversed his convictions and thereby restored the case to a pretrial posture.[2]

After this case was remanded for a new trial, the trial court held a pretrial hearing on June 15, 2015.  At that time, the trial court had not received the court file back from this Court.  The prosecutor also had not located his file and, therefore, defense counsel did not have discovery.  The trial court commented that "we're a little slow," but it set a trial date of October 5, 2015.

A delay of six months is necessary to trigger further investigation into a speedy trial claim.  *People v Daniel*, 207 Mich App 47, 51; 523 NW2d 830 (1994).  This Court issued its decision reversing defendant's convictions on March 24, 2015.  Defendant's second trial began on October 5, 2015.  Thus, the period of delay between reversal of defendant's convictions and the start of defendant's second trial was approximately 6½ months.  Delays inherent in the judicial system, such as docket congestion, are technically attributable to the prosecution, but they are given a neutral tint and assigned only minimal weight when evaluating a speedy trial claim.  *Williams*, 475 Mich at 263.  Therefore, although the 6½-month period between this Court's reversal of defendant's convictions and the start of defendant's second trial may be attributed to the prosecution, it is accorded a neutral tint and minimal weight.

Adding both the period of time between defendant's arrest and the start of defendant's first trial (approximately 8½ months)[3] and the period of time between the conclusion of defendant's prior appeal and the start of his second trial (approximately 6½ months), leads to a total period of delay of approximately 15 months.  Because the total period of time is less than 18 months, defendant had the burden of showing that he was prejudiced by the delay.  *Rivera*, 301 Mich App at 194.  While defendant claims that he suffered prejudice to both his defense and his person, he does not explain how his defense was affected by the delay.  He has not identified any evidence that was lost or witnesses who became unavailable.  See *Williams*, 475 Mich at 264; *People v Collins*, 388 Mich 680, 694; 202 NW2d 769 (1972).  We note that when this issue was argued below on September 25, 2015, defense counsel stated that she was not able to locate

---

[1] We conclude that the time consumed on appeal was reasonable, as it was consistent with our general rate of clearance.

[2] We note that the prosecution did not file a motion for reconsideration in this Court following reversal of the convictions, nor did the prosecution file an application for leave to appeal in the Michigan Supreme Court.  We shall proceed on the assumption that the periods of time during which the prosecution could have sought reconsideration and/or an application for leave should be counted in favor of defendant and not the prosecution.

[3] We are proceeding on an assumption that the period of time between defendant's arrest and the first trial is countable and subject to consideration in analyzing defendant's speedy trial claim under the procedural posture of this case.  We seriously question whether it would be proper to count any of this period in favor of defendant, as opposed to simply and solely examining the period between the appellate decision and the second trial.

defendant's niece, and none of the family members knew her whereabouts. However, defendant does not argue on appeal that he was prejudiced by not being able to produce his niece at trial, or that his inability to locate her was caused by the delay in proceeding to trial. Defendant similarly fails to explain how he suffered prejudice to his person, other than by generally referring to the time he spent in jail or prison. See *Collins*, 388 Mich at 694 (prejudice to a person "would take the form of oppressive pretrial incarceration leading to anxiety and concern"). Again, the countable time in this case was less than 18 months, so prejudice cannot be presumed, and prejudice to the defense, which has not been shown, is the more serious question when compared to prejudice to the person. See *Williams*, 475 Mich at 264 (citing cases with delays of 19 and 27 months where the defendants were not deprived of their speedy trial rights, despite incarceration for the entirety of the delays, given the absence of prejudice to the defenses). Even if we count the entire period from defendant's arrest up to the date of his second trial, excluding the period of defendant's prior appeal, defendant has not shown that he was deprived of his constitutional right to a speedy trial.

## B. SUFFICIENCY OF THE EVIDENCE

Next, defendant argues that the evidence was insufficient to support his convictions. Defendant observes that all of his convictions were predicated on his possession or use of a firearm. Defendant argues that the evidence failed to prove that he possessed a firearm or fired gunshots at the landlord. Defendant emphasizes that the landlord testified only that he saw a black object in defendant's hand, which he assumed was a gun, and that the landlord did not actually see defendant fire the gunshots. Therefore, defendant argues, the trial court erred in denying his motion for a directed verdict of acquittal.

We review de novo the issue regarding whether there was sufficient evidence to sustain a conviction. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). In reviewing the sufficiency of the evidence, this Court must view the evidence – whether direct or circumstantial – in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

The crime of felonious assault involves (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery. *People v Avant,* 235 Mich App 499, 505; 597 NW2d 864 (1999). The elements of felony-firearm require that the defendant possess a firearm during the commission of, or the attempt to commit, a felony. *Id*. The felon-in-possession charge was premised on defendant

having possessed, used, transported, or carried a firearm after having been previously convicted of a specified felony. See MCL 750.224f; *People v Perkins*, 473 Mich 626, 630-632; 703 NW2d 448 (2005).

It was undisputed at trial that the landlord was shot by a firearm. The evidence that he sustained a gunshot wound was sufficient proof that a firearm was used in this crime. The issue at trial focused on the identity of the shooter. Identity is an element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

Defendant acknowledges that the landlord described seeing him remove a black object from his coat pocket just before the shots were fired, but argues that the type of ammunition linked to the shooting could not have been fired from a gun small enough to fit in his coat pocket. We disagree. The police recovered two spent .380 shell casings from the scene, and a bullet fragment recovered from the landlord was consistent with that type of shell casing. A police officer testified that a "380 is actually a small firearm" and that, although there are several different makes of it, "a 380 is typically . . . a small, very small handgun." This evidence permitted the jury to infer that the landlord was shot with a gun that could have fit into defendant's coat pocket.

Defendant argues that because the landlord conceded that he did not see an actual gun, and because the landlord admitted that he assumed that others at the house were also armed, it is possible that someone else fired the shots at him. The landlord testified, however, that the shots were fired after he saw defendant remove a black object from his coat, that the shots came from the left side of his car where defendant was standing, and that he did not see anyone else outside when the shots were fired. This testimony allowed the jury to infer and conclude, reasonably so, that defendant was the shooter, even if the landlord did not actually see a gun or see defendant fire the shots. Defendant's actions before the shooting, including keeping his right hand in his coat pocket, were also consistent with him having a gun in that pocket. Defendant argues that a scenario identifying him as the shooter cannot logically comport with both the landlord's testimony that the gunshots were fired before he pulled off in his car, while defendant was still standing at the left side of the car, and the fact that the gunshots were fired through the rear side window. The landlord testified on direct examination that he was "[i]n the process of . . . slamming the door and trying to shift gears to pull off" when he heard the two gunshots. On cross-examination, the landlord acknowledged that he had previously testified that he "hadn't even pulled off yet" when the shots were fired. These accounts are not inconsistent with defendant firing the shots through the left-side rear backseat window from his position on the left side of the car. Viewed in a light most favorable to the prosecution, the evidence and reasonable inferences arising from the evidence was sufficient to establish defendant's identity as the shooter beyond a reasonable doubt.

Defendant also argues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, that the trial court should have directed a verdict of acquittal. Defendant essentially presents the same argument addressed above relative to the sufficiency of the evidence and whether he possessed and discharged a firearm. The trial court was required to view the evidence in the light most favorable to the prosecution and to not make credibility determinations when ruling on the motion for a directed verdict. *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997). This is effectively the same standard applicable to

sufficiency review. Accordingly, defendant's argument fails for the reasons discussed earlier. In sum, sufficient evidence was presented at trial to support defendant's convictions. And the trial court did not err in denying defendant's motion for a directed verdict.

## II. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in his Standard 4 brief, none of which warrant reversal. Defendant first argues that the evidence at the preliminary examination was insufficient to establish probable cause to bind him over for trial on the charges related to the shooting of the landlord, focusing his argument, again, on the claimed lack of evidence that he possessed and fired a gun. "[A] magistrate's erroneous conclusion that sufficient evidence was presented at the preliminary examination is rendered harmless by the presentation at trial of sufficient evidence to convict." *People v Libbett*, 251 Mich App 353, 357; 650 NW2d 407 (2002). Given our conclusion that there was sufficient evidence presented at trial to support the convictions, any assumed error with respect to the bindover, and there was none, was rendered harmless.

Defendant additionally argues that the prosecutor impermissibly elicited testimony concerning, and commented on, his post-arrest, post-*Miranda*[4] silence. The issue was unpreserved; therefore, our review is for plain error affecting defendant's substantial rights. *People v Shafier*, 483 Mich 205, 219; 768 NW2d 305 (2009). To the extent and assuming that under *Doyle v Ohio*, 426 US 610; 96 S Ct 2240; 49 L Ed 2d 91 (1976), *People v Borgne*, 483 Mich 178; 768 NW2d 290 (2009), and *Shafier*, the prosecutor overstepped his bounds, defendant has failed to establish the requisite prejudice, nor has he shown that any assumed error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of his innocence. *Shafier*, 483 Mich at 219-220. Any error was limited and not pervasive and there was strong untainted evidence of defendant's guilt, along with a dearth of evidence supporting defendant's exculpatory testimony. Reversal is unwarranted.

Defendant next argues that the prosecutor engaged in misconduct by misrepresenting the evidence during closing and rebuttal arguments and by failing to correct the landlord's "false" testimony at trial. The record belies defendant's assertions. Upon consideration of his trial and preliminary examination testimony, there is no indication that the landlord gave false or even inconsistent testimony regarding the object in defendant's pocket. And there certainly was no evidence or information in the record remotely suggesting that the prosecutor knowingly acquiesced in the presentation of perjured testimony. See *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). Further, the prosecutor's remarks during closing and rebuttal arguments challenged by defendant were either directly supported by the evidence or constituted reasonable inferences arising from the evidence, such as the argument that defendant possessed a firearm in his pocket and shot the landlord with it. See *People v Bahoda,* 448 Mich 261, 282; 531 NW2d 659 (1995). There is no basis for reversal predicated on prosecutorial misconduct.

---

[4] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Finally, the statement of questions presented in defendant's Standard 4 brief raises an issue of sentencing error. However, defendant fails to provide any discussion of this issue in the body of his brief. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). Because defendant fails to discuss this issue in his brief, it has been abandoned.

Affirmed.


/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Stephen L. Borrello