# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LAWRENCE STAFFORD,

        Defendant-Appellant.

UNPUBLISHED
September 13, 2018

No. 336842
Wayne Circuit Court
LC No. 16-005373-01-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TRAVONE LATRELL WILSON,

        Defendant-Appellant.

No. 339133
Wayne Circuit Court
LC No. 16-005373-02-FC

Before: SWARTZLE, P.J., and JANSEN and O'BRIEN, JJ.

PER CURIAM.

Defendants Lawrence Stafford and Travone Wilson were tried jointly, before a single jury. The jury acquitted both defendants of charges of first-degree premeditated murder and felony murder, MCL 750.316(1)(a) and (b), and a charge of first-degree home invasion, MCL 750.110a(2), but convicted them of the lesser offense of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony firearm), MCL 750.227b. The trial court sentenced defendant Stafford to 30 to 60 years of imprisonment for the murder conviction, and a consecutive two-year term of imprisonment for the felony-firearm conviction. The trial court sentenced defendant Wilson to 18 to 30 years of imprisonment for the murder conviction, and a consecutive two-year term of imprisonment for the felony-firearm conviction. Both defendants appeal as of right. We affirm in both appeals.

-1-

## I. BACKGROUND

Defendants' convictions resulted from their participation in the fatal shooting of Ernest Tye in Tye's home. The defendants are brothers even though they have different last names. The principal issue at trial was defendants' identity as participants in the crime. The prosecutor presented evidence that defendant Stafford, defendant Wilson, and a person named Willie Simms were seen outside the duplex where Tye lived in an upstairs unit, and they gained entrance after defendant Stafford kicked in the door. Defendants Stafford and Wilson entered the duplex, while Simms stayed behind, acting as a lookout. Henric Hayes, who lived in the downstairs unit of the duplex, heard concerning noises originating from the stairwell, opened his door, and saw Simms holding a gun and wearing plastic gloves. Hayes quickly slammed his door and, soon after, heard several gunshots originating from Tye's unit. Charles Deen, a neighbor who had observed the three men gain entry into the duplex, heard several gunshots and then saw defendant Stafford, defendant Wilson, and Simms flee from the duplex. Around the same time, another witness, Mark Eddins, saw defendant Stafford, defendant Wilson, and Simms fleeing from the area of the duplex, running toward a vacant house that the three men frequented. Defendants Stafford and Wilson both denied any involvement in the offense.

Simms was convicted of second-degree murder at a jury trial in March 2016, and sentenced to 22 to 40 years in prison. At that time, defendants Stafford and Wilson had not yet been apprehended. This Court affirmed Simms's conviction and sentence in *People v Simms*, unpublished per curiam opinion of the Court of Appeals, issued October 31, 2017 (Docket No. 333198). As noted above, the instant defendants were tried and convicted in a joint trial. These appeals followed.

## II. DOCKET NO. 336842 (DEFENDANT STAFFORD)

### A. Sufficiency of the Evidence

Defendant Stafford argues that the prosecutor failed to present sufficient evidence that he was at the duplex when Tye was shot, and that, even if he was present, the prosecutor failed to present sufficient evidence that he participated in Tye's murder as a principal or an aider and abettor to support his convictions of second-degree murder and felony-firearm. We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When ascertaining whether sufficient evidence was presented at trial to support a conviction, we must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

At trial, the prosecutor advanced the theory that defendant Stafford was guilty of murder and felony-firearm as either a principal or an aider or abettor. The elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). "The elements of felony-

firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

A person who aids or abets the commission of a crime may be convicted and punished as if he directly committed the offense. MCL 767.39. "To support a finding that a defendant aided and abetted a crime, the prosecution must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant [either] intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement," *People v Izarraras-Placante*, 246 Mich App 490, 495-496; 633 NW2d 18 (2001) (cleaned up), "or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense," *People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006). Aiding and abetting includes all forms of assistance rendered to the perpetrator of a crime and comprehends all words or deeds that might support, encourage, or incite the commission of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." *People v Lawton*, 196 Mich App 341, 352; 492 NW2d 810 (1992). An aider or abettor's state of mind may be inferred from all the facts and circumstances, including a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime. *Carines*, 460 Mich at 757-758.

Identity is an essential element in a criminal prosecution. *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976). Positive identification by a witness or circumstantial evidence and reasonable inferences arising from it may be sufficient to support a conviction of a crime. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). The credibility of identification testimony is for the trier of fact to resolve and this Court will not resolve it anew. *Id*.

Evidence was presented that on the day that Tye was shot, defendant Stafford came to the duplex that Tye shared with his cousin, Hayes, inquiring if Tye was home. Minutes later, defendant Stafford returned, again looking for Tye. Later that evening, Deen, who was on the front porch of the house next door to Tye's residence, observed defendant Stafford, defendant Wilson, and Simms on Tye's front porch and watched defendant Stafford kick the front door open. Defendant Stafford, accompanied by defendant Wilson, entered the duplex, while Simms stayed by the door, acting as a lookout. Hayes, who lived on the lower level, heard concerning loud noises originating from the stairwell that led to Tye's upstairs unit, opened his door, and observed Simms standing in the vestibule, alone, and holding a firearm. Hayes did not see defendant Stafford or defendant Wilson, but soon thereafter heard gunshots originating from Tye's upstairs unit. Deen testified that after defendants Stafford and Wilson entered the duplex, he heard several gunshots. From the witnesses' testimony about their observations, it can be inferred that defendants Stafford and Wilson went up the stairs to Tye's unit with a malicious intent and were inside Tye's unit at the time of the shooting. Immediately after the gunshots rang out, Deen saw defendant Stafford and the two others run out of the duplex, toward the back of the house. According to Eddins's testimony, at approximately the same time, he observed defendant Stafford running away from the area, toward Goddard St., with the two others, and he heard someone state, "Hurry up, come on, let's go. Hurry up, hurry up." A canine officer tracked a scent from the duplex to a vacant house on Goddard St.

In light of the testimony that defendant Stafford was the person who twice inquired about Tye's whereabouts earlier in the day, later kicked in the front door of Tye's duplex to gain entrance, and was one of the two men in Tye's unit when Tye was shot, the jury could reasonably infer that defendant Stafford was the person who shot Tye. And to the extent there was uncertainty over which person delivered the fatal gunshots, a rational trier of fact could conclude from the witnesses' testimony about Stafford's and the others' conduct before the shooting, their coordinated actions during the offense, and their conduct of fleeing the scene immediately after the gunshots, that Stafford and the others were acting in concert and shared a malicious intent in committing Tye's murder. Thus, the evidence was sufficient to sustain defendant Stafford's convictions under either a principal or an aiding-and-abetting theory.

B.      Defendant Stafford's Standard 4 Brief

In a pro se supplemental brief filed under Supreme Court Administrative Order No. 2004-6, Standard 4, defendant Stafford raises additional issues challenging the prosecutor's conduct related to the presentation of Deen's and Eddins's testimony at trial. None of these issues have merit. Because defendant Stafford failed to object at trial to either the prosecutor's conduct or the admission of the testimony on the grounds he now raises, these claims are unpreserved and are reviewed for plain error affecting defendant Stafford's substantial rights. *Carines*, 460 Mich at 763-764. "Substantial rights are affected when the defendant is prejudiced, meaning the error affected the outcome of the trial." *People v Jones*, 297 Mich App 80, 83; 823 NW2d 312 (2012).

*Fraud on the Trial Court.* Defendant Stafford argues that the prosecutor committed fraud on the trial court by presenting Deen as a witness, knowing that Deen had been "tampered with" by Tye's sister. At trial, Deen testified that he did not initially provide any information to the police because he did not want to be bothered or become involved in the matter. Later, Tye's sister offered to drive Deen to the store to buy him a beer. After leaving the store, she did not take Deen home, but drove him to a police station where he spoke with a detective. On cross-examination, defendant Stafford's attorney questioned Deen about his motive for deciding to talk to the police:

> *Q.* And why did it take you three weeks to come down?
>
> *A.* I didn't want to get—I didn't want to get in that mess. I told you all and I'll tell you again: I didn't want to be bothered with that.
>
> *Q.* All right. And what caused you to change your mind?
>
> *A.* [Tye's] sister had came [and] got me.
>
> *Q.* All right. And you said something about buying a beer.
>
> *A.* She bought me a beer.
>
> *Q.* And that changed your mind?
>
> *A.* By that time, she had jumped on the freeway and brought me down here.

*Q.* Okay. So you weren't going to come until she decided to buy you a beer?

*A.* No, I wasn't coming anyway. I didn't want to come at all. Only thing she told me, she asked me, "Mr. Deen, do you still drink?"

I said, "Yes."

"Let me go buy you a beer." I said, "Okay."

But we went the store. She went in the store, bought me a beer, came back out, got back in the van. She went on the freeway, come down—stopped down, and now I got to talk to the other detectives.

Based on Deen's testimony that he spoke to the police only after Tye's sister bought him a beer and then, unbeknownst to him, drove him to the police station, defendant Stafford now argues that the prosecutor perpetrated a fraud on the court by presenting Deen as a prosecution witness. "A fraud is perpetrated on the court when some material fact is concealed from the court or some material misrepresentation is made to the court." *Matley v Matley (On Remand)*, 242 Mich App 101, 101; 617 NW2d 718 (2000) (cleaned up).

Defendant Stafford has not shown that the prosecutor sought to make a material misrepresentation to the trial court. Both parties asked Deen questions regarding his delay in making a statement to the police and his motivation for finally doing so. Defense counsel, the trial judge, and the jury were all aware that Deen did not want to speak to the police and did so only after Tye's sister bought him a beer and brought him to the police station. Once there, however, Deen chose to tell the police what he saw, and later testified in court proceedings against Simms, as well as defendants Stafford and Wilson. Contrary to what defendant Stafford argues, the mere fact that Deen first made a statement only after Tye's sister became involved does not demonstrate that the prosecutor intentionally deceived the trial court or that the prosecutor presented false testimony. Deen's delay in going to the police and his reasons for finally doing so were matters for the jury to consider in evaluating his credibility, as the parties addressed in closing argument. Defendant Stafford has not demonstrated that material facts were concealed from the trial court. Therefore, his claim of error is without merit.

*Witness Intimidation.* Defendant Stafford also argues that the prosecutor engaged in misconduct that denied him due process by presenting Deen's "false" testimony, knowing that it was garnered by Tye's sister's bribery and intimidation. As indicated previously, Deen testified regarding the circumstances that led to his decision to tell the police what he saw. Although Tye's sister bought Deen a beer and then drove him to the police station, there is no indication that she threatened, intimidated, influenced, or encouraged him to give *false* testimony. See MCL 750.122(3). Instead, Deen's testimony reveals that even though he did not want to talk to the police, once Tye's sister drove him to the police station, he "told them what [he] [had] seen." Deen testified at trial that he was testifying truthfully and had no reason to lie. It was up to the jury to determine whether the involvement of Tye's sister in getting Deen to report what he saw to the police affected his credibility. Defendant Stafford has not demonstrated that Tye's sister

-5-

influenced Deen to testify falsely through any intimidation or bribery. Defendant Stafford's argument is without merit.

*Perjured Testimony*. In his last issue, defendant Stafford cites instances when Deen's and Eddins's testimony differed from their prior testimony and other witnesses' trial testimony or police statements. He argues that these inconsistencies demonstrate that the prosecutor knowingly presented perjured testimony. As defendant Stafford correctly observes, a prosecutor may not knowingly use false testimony to obtain a conviction. *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015).

The inconsistencies listed by defendant Stafford do not establish that the prosecutor knowingly used perjured testimony to obtain his convictions. Although there were instances when both witnesses' trial testimony differed from their prior testimony, there is no indication that the prosecutor sought to conceal those inconsistencies. Indeed, defendant Stafford cites examples of when either one of the defense attorneys or the prosecutor questioned the witnesses about their inconsistent statements.

For example, Deen initially testified that he saw someone reach through the mail slot to open the screen door of the duplex, but later clarified that he "didn't see that." He testified that Hayes opened a door, but upon further questioning, clarified that he did not see Hayes open the security door, but saw defendant Stafford kick it open. Deen was also questioned about inconsistencies in his testimony related to where he was positioned on the porch during his observations, whether porch lights were on, and whether he had consumed alcohol on the day of the murder. Defendant Stafford emphasizes that according to Deen's police statement, Deen identified the person he saw at the duplex as "Al." At trial, however, Deen testified that he was not stating "AL," but "L," which is defendant Stafford's nickname. And as previously indicted, the jury was made aware that Deen first talked to the police after Tye's sister bought him a beer and drove him to the police station. Regarding Eddins, he was also questioned, for example, about his unclear testimony concerning the presence of street lights and how often he saw the three defendants each week.

In closing argument, the prosecutor acknowledged that there were some inconsistencies in the witnesses' testimony, stating: "People see, hear, and remember things differently. Does that explain why there's a difference in testimony? If you decide a witness lied about something important, you can just believe everything they say, you can believe some of what they say, or pick the good parts and separate out the bad parts."

Testimony that conflicts with prior testimony or other witnesses' testimony does not lead to the conclusion that the prosecutor knowingly used perjured testimony. Defendant Stafford's argument does not involve an issue of perjury, but of witness credibility. Both defense attorneys explored the credibility problems with Deen's and Eddins's testimony, as well as other prosecution witnesses. The jury was free to believe or disbelieve all or any portion of the witnesses' trial testimony. *Unger*, 278 Mich App at 222.

## III. DOCKET NO. 339133 (DEFENDANT WILSON)

A.    Sufficiency of the Evidence

Defendant Wilson's first argument is that the prosecutor failed to present sufficient evidence to support his convictions of second-degree murder and felony-firearm. We disagree.

*Second-Degree Murder.* Defendant Wilson was charged with first-degree premeditated murder, MCL 750.316(1)(a), and the jury convicted him of the lesser offense of second-degree murder. Defendant Wilson's sole claim challenging the sufficiency of the evidence for his second-degree murder conviction is that the evidence demonstrated an "execution style murder," and thus could support only a conviction of first-degree murder or an acquittal. Second-degree murder is a lesser offense of first-degree murder, distinguished by the element of intent. *People v Fletcher*, 260 Mich App 531, 557; 679 NW2d 127 (2004). While the intent to kill with premeditation and deliberation is required for first-degree murder, a conviction of second-degree murder requires only that the defendant act with malice. *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998).

Preliminarily, after instructing the jury on first-degree premeditated murder, the trial court informed the jury that it also had the option of finding defendant Wilson guilty of the lesser offense of second-degree murder. As defendant Wilson acknowledges, he approved of the trial court's instructions. Contrary to what defendant Wilson now suggests, the fact that he and his counsel believe that this case involved an execution-style murder, which he argues could only support a conviction of first-degree premediated murder, is irrelevant. The question before us is whether the evidence was sufficient to support defendant Wilson's conviction of second-degree murder, as either a principal or an aider and abettor. As previously noted, the elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *Smith*, 478 Mich at 70. "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002) (cleaned up). Malice may be inferred from facts in evidence, including the use of a dangerous weapon. *People v Bulls*, 262 Mich App 618, 627; 687 NW2d 159 (2004).

Two witnesses, Deen and Eddins, unequivocally identified defendant Wilson as a person involved in the offense. The evidence disclosed that, earlier in the day, defendant Wilson's brother, defendant Stafford, had been looking for Tye. Later, Deen observed defendant Wilson with defendant Stafford and Simms on Tye's porch, and saw defendant Wilson enter the duplex with defendant Stafford after the latter kicked in the door. Hayes heard loud noises originating from the stairwell that led to Tye's upstairs unit, opened his door, and saw Simms standing in the vestibule, alone, and holding a firearm; Hayes did not see defendants Wilson or Stafford, but soon thereafter heard gunshots originating from Tye's upstairs unit. Deen testified that after defendants Wilson and Stafford entered the duplex, he heard several gunshots. Immediately after the gunshots rang out, Deen and Eddins saw defendant Wilson and the two others flee from the duplex.

From this evidence, a jury could reasonably infer that defendant Wilson acted in concert with defendant Stafford and Simms in committing Tye's murder. Although there was testimony that could have supported an inference of premeditation and deliberation, it was within the purview of the jury to find that the defendants caused Tye's death with malice, but did not do so

with a premeditated and deliberate intent to kill him. Thus, while defendant Wilson suggests alternative ways of viewing the evidence, it was up to the trier of fact to evaluate the evidence. For purposes of resolving this sufficiency challenge, we are required to view the evidence in a light most favorable to the prosecution. *Reese*, 491 Mich at 139. Viewed in this manner, the evidence was sufficient to sustain defendant Wilson's conviction of second-degree murder.

*Felony Firearm*. Defendant Wilson also argues that the prosecution failed to present any evidence to support that he "specifically" aided in the commission of felony-firearm. "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). "Under the aiding and abetting statute, MCL 767.39, the correct test for aiding and abetting felony-firearm in Michigan is whether the defendant procures, counsels, aids, or abets in another carrying or having possession of a firearm during the commission or attempted commission of a felony." *People v Moore*, 470 Mich 56, 70; 679 NW2d 41 (2004) (cleaned up). Further,

> [e]stablishing that a defendant has aided and abetted a felony-firearm offense requires proof that a violation of the felony-firearm statute was committed by the defendant or some other person, that the defendant performed acts or gave encouragement that assisted in the commission of the felony-firearm violation, and that the defendant intended the commission of the felony-firearm violation or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement. In determining whether a defendant assisted in the commission of the crime, the amount of advice, aid, or encouragement is not material if it had the effect of inducing the commission of the crime. It must be determined on a case-by-case basis whether the defendant performed acts or gave encouragement that assisted in the carrying or possession of a firearm during the commission of a felony. [*Id*. at 70-71 (cleaned up).]

Viewed in the light most favorable to the prosecution, defendant Wilson's actions demonstrated an intent to aid or abet the possession of a firearm during the commission of Tye's murder. The same evidence that supports defendant Wilson's conviction of second-degree murder under an aiding and abetting theory also supports his felony-firearm conviction. From the evidence that the three men were on the front porch of Tye's duplex when defendant Stafford kicked in the door, but only Simms remained outside to act as lookout, the jury could infer that defendant Wilson and defendant Stafford both entered Tye's unit. The evidence that Tye was shot multiple times inside his unit means that either defendant Wilson or defendant Stafford was armed with a gun. After the shooting, defendant Wilson fled the scene with defendant Stafford and Simms. A jury could infer from this evidence that defendant Wilson, if not armed and using a firearm himself, knew that defendant Stafford intended to use a firearm to carry out the crime. Thus, defendant Wilson assisted the others in the possession of a firearm. Accordingly, sufficient evidence supports defendant Wilson's conviction for felony-firearm as either a principal or under an aiding-and-abetting theory.

B.    Great Weight of the Evidence

Defendant Wilson next argues that the testimony of Deen and Eddins was so inconsistent and untrustworthy that the jury's verdict is against the great weight of the evidence and it would be a miscarriage of justice to allow the verdict to stand. Defendant raised this issue in a motion for a new trial, which the trial court denied.

We review a trial court's decision denying a motion for a new trial for an abuse of discretion. *People v Abraham*, 256 Mich App 265, 269; 662 NW2d 836 (2003). A new trial may be granted if a verdict is against the great weight of the evidence. MCR 2.611(A)(1)(e). In evaluating whether a verdict is against the great weight of the evidence, the question is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v Lemmon*, 456 Mich 625, 627; 576 NW2d 129 (1998); *Unger*, 278 Mich App at 232. A verdict may be vacated only when it "does not find reasonable support in the evidence, but is more likely to be attributed to causes outside the record such as passion, prejudice, sympathy, or some extraneous influence." *People v DeLisle*, 202 Mich App 658, 661; 509 NW2d 885 (1993) (cleaned up). Absent compelling circumstances, the credibility of witnesses is for the jury to determine. See *Lemmon,* 456 Mich at 642-643.

As already discussed, sufficient evidence supports defendant Wilson's convictions. Tye died as the result of receiving multiple gunshot wounds. Considering the testimony that defendant Wilson entered Tye's duplex after defendant Stafford kicked in the door, leaving Simms to act as lookout, was in the unit when Tye was shot, and fled the scene with defendant Stafford and Simms after the shooting, we cannot conclude that the evidence preponderates so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand. *Lemmon*, 456 Mich at 647. Defendant Wilson's great-weight arguments essentially amount to an attack on the prosecution witnesses' credibility. Conflicting testimony and questions regarding the credibility of witnesses, however, are not sufficient grounds for granting a new trial. *Id*. at 643. The jury was aware of the potential credibility issues with the witnesses' testimony. Both defense attorneys cross-examined the witnesses at length and presented credibility arguments to the jury. A reviewing court should ordinarily defer to the jury's determination of credibility "unless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities." *Id*. at 645-646 (cleaned up). That is not the case here. The testimony of several witnesses linked defendant Wilson to the shooting. The fact that there was no physical evidence linking defendant Wilson to the shooting did not deprive the witness testimony of all probative value. There is nothing in the record to warrant the unusual step of overriding the jury's credibility determinations. Again, it was up to the jury to assess the weight and reliability of the circumstantial identification evidence in light of the factors explored by the defense. *Id.* at 643-644. The jury's verdict is not against the great weight of the evidence, and the trial court did not abuse its discretion by denying defendant Wilson's motion for a new trial on this basis.

C.    Prosecutorial Misconduct

Next, defendant Wilson argues that the prosecutor engaged in misconduct that denied him due process by presenting misleading, if not false, testimony that he failed to correct. As

discussed previously, defendant Stafford has raised the same claim. Thus, we reject defendant Wilson's claim for the same reasons as we reject defendant Stafford's claim.

D. Effective Assistance of Counsel

Finally, defendant Wilson argues that defense counsel was ineffective for failing to obtain a transcript of Eddins's testimony from Simms's earlier trial. Because defendant Wilson did not raise an ineffective assistance of counsel claim in the trial court, our review of this issue is limited to mistakes apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (cleaned up). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*.

When claiming ineffective assistance due to defense counsel's purported unpreparedness, a defendant must show prejudice resulting from the lack of preparation. *People v Caballero*, 184 Mich App 636, 640, 642; 459 NW2d 80 (1990). In this case, the record does not support defendant Wilson's assertion that defense counsel was unprepared to try the case because he failed to obtain a transcript of Eddins's testimony from Simms's trial. Because Eddins was unavailable for trial, his preliminary examination testimony was read into the record. Contrary to what defendant Wilson argues, the record clearly shows that defense counsel possessed Eddins's prior testimony from Simms's trial and used it at trial to impeach Eddins's preliminary examination testimony. Indeed, defendant Wilson's Trial Exhibit 1 was "Excerpts of Eddins' trial transcripts," from which defense counsel read numerous questions and answers, illustrating alleged inconsistencies in Eddins's testimony. In closing argument, defense counsel used the prior testimony to highlight inconsistencies in Eddins's and Deen's testimony. On a third occassion, when arguing defendant Wilson's motion for a new trial, defense counsel gave the trial court examples of when he "use[d] specific portions from [Simms's] jury trial to show the inconsistencies in [Eddins's] testimony." To the extent that defendant Wilson is suggesting that defense counsel should have obtained the prior testimony earlier, he has not explained what defense counsel could have done differently or how the outcome of the proceeding would have been different had he done so. Because the record shows that defense counsel obtained Eddins's testimony from Simms's trial, and proficiently used that testimony at trial to impeach Eddins's preliminary examination testimony, defendant Wilson has not demonstrated that he was prejudiced by any alleged unpreparedness.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kathleen Jansen
/s/ Colleen A. O'Brien