*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SUZANNE LABARGE,

        Defendant-Appellant.

UNPUBLISHED
January 14, 2021

No. 345100
Wayne Circuit Court
LC No. 17-010992-01-FH

Before: K.F. KELLY, P.J., and STEPHENS and CAMERON, JJ.

PER CURIAM.

Defendant, Suzanne Labarge, appeals her bench trial conviction of assault with a dangerous weapon ("felonious assault"), MCL 750.82. Labarge was sentenced to 2-1/2 years' probation. We affirm.

## I. BACKGROUND

On the evening of July 12, 2017, the victim was crossing Eight Mile Road on foot while he was on a break from his nearby place of employment. As the victim was crossing four lanes of traffic in order to reach the median, the victim noticed Labarge, who was driving a 2015 Dodge Dart, stopped at the light. According to the victim, Labarge was in the "fourth lane" of traffic and in the lane that was closest to the median. When the victim was 1-1/2 feet in front of Labarge's vehicle, the victim noticed that Labarge was making hand gestures. A few seconds later, when the victim was six to eight inches in front of Labarge's vehicle and walking past her driver's side headlight, the victim heard Labarge's engine rev and saw Labarge's vehicle move forward. The victim jumped out of the way and onto the median to avoid being hit. After the victim jumped out of the way, Labarge drove away, and the victim lost sight of Labarge's vehicle.

The victim, who was "[f]rightened," remained on the median and texted his attorney. A short period of time later, the victim noticed a man walking towards him on the median. The man, whom the victim did not recognize, aggressively questioned the victim about Labarge. After the exchange, the victim saw the man walk to Labarge's vehicle, which was stopped in a nearby "Michigan U-turn" lane. The man got into Labarge's vehicle, and they drove away. The victim

-1-

took photographs and a video of the man getting into Labarge's vehicle. The victim contacted law enforcement, and Labarge was charged with felonious assault.

At the bench trial, the victim testified for the prosecution. Officer Sarah Monti was called by the defense to testify about the statements that the victim made when reporting the crime. Labarge testified on her own behalf and admitted to seeing the victim crossing Eight Mile Road while her vehicle was stopped at a light. Labarge testified that the victim had hit her in the face with a gun in the past and that she became frightened upon seeing the victim. According to Labarge, a man named Jamar, whom she had met earlier that day, was a passenger in her vehicle at the time. After seeing how afraid Labarge appeared, Jamar got out of Labarge's vehicle and approached the victim. Once the light turned green, Labarge got into the U-turn lane and called for Jamar to get back into her vehicle. Labarge testified that, at that time, she saw the victim "brandish" a gun. After Jamar got back into the vehicle, Labarge left the scene and did not contact law enforcement. Labarge denied revving her engine, accelerating her vehicle, or trying to scare the victim. Labarge also denied that the victim had to jump out of the way of her vehicle to avoid being hit. The trial court found Labarge guilty of felonious assault and sentenced Labarge as described above.

This appeal followed, and this Court granted Labarge's motion to remand so that she could bring a motion for a new trial and have a *Ginther*[1] hearing concerning her claims of ineffective assistance of counsel.[2] Labarge filed a motion for a new trial before the trial court, arguing that her trial counsel was ineffective for failing to call an expert witness to testify that the victim's testimony regarding his proximity to Labarge's vehicle at the time that Labarge accelerated toward him was physically impossible. The trial court scheduled a *Ginther* hearing.

At the *Ginther* hearing, trial counsel testified that he had not thought to call an expert in accident reconstruction to testify at trial, noting that there had not been an accident. Trial counsel also believed that any expert would need to inspect Labarge's 2015 Dodge Dart or its black box data to provide a relevant opinion. Trial counsel noted that the Dodge Dart was not available for inspection. Although trial counsel acknowledged that, before trial, Labarge had shown him "some numbers jotted down in a notebook" and had said that the numbers were "from online" and that they had "to do with the acceleration" of the vehicle, trial counsel indicated that Labarge was unable to explain the figures to him. Trial counsel further testified that, based on a conversation that he had had with Labarge, part of the trial strategy had been not to pursue additional evidence, such as surveillance footage from nearby businesses. Trial counsel also testified that he did not seek the opinion of an expert because he believed that, if the expert's opinion was unfavorable to the defense, the prosecutor would use the expert against the defense at trial. Trial counsel testified that his strategy at trial was to impeach the victim by arguing that he had a motive to lie and by pointing out that his version of the events was "either impossible or improbable."

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] *People v Labarge*, unpublished order of the Court of Appeals, entered May 1, 2019 (Docket No. 345100).

Dr. Keith Button, a biochemical engineer who performs accident reconstruction, testified that it was "[e]xtremely unlikely" that the victim's testimony regarding his proximity to Labarge's vehicle was accurate. Specifically, based on the width and acceleration rate of 2015 Dodge Darts, the recorded reaction times of average persons, and "the ability of a human to move," Dr. Button did not believe that a person would have been able to avoid being hit under the circumstances described by the victim. However, Dr. Button acknowledged that he had not inspected Labarge's 2015 Dodge Dart, had not visited the scene, and did not know the weather conditions on the date in question.

After hearing testimony and oral argument, the trial court denied Labarge's motion for a new trial. The trial court concluded that trial counsel was not ineffective and found that, "even if Dr. Button testified at trial, his testimony would not have changed this court's ultimate finding of Ms. Labarge's guilt." In relevant part, the trial court concluded as follows:

> This court can unequivocally state that it would not have been persuaded by Dr. Button's weak credentials and his "armchair expert" theories, lacking as they were in any firsthand knowledge of [Labarge's] particular vehicle, or direct knowledge of the road and its conditions at the time of this incident.

> Finally, Dr. Button's testimony did not and could not reach the ultimate issue in this case, which was whether the [victim] reasonably believed that he was in danger of immediate battery. This court unambiguously resolved that question against Ms. Labarge at the bench trial, and sees no basis in law to now change that conclusion.

## II. ANALYSIS

On appeal, Labarge argues that she is entitled to a new trial because her trial counsel provided ineffective assistance by failing "to investigate and present scientific evidence that would have demonstrated the [victim's] allegations were implausible." We disagree.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004) (quotation marks and citation omitted). "The trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *Id*. (citations omitted). A finding is clearly erroneous if this Court is "left with a definite and firm conviction that the trial court made a mistake." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citation omitted).

To prevail on a claim of ineffective assistance of counsel, a defendant "must establish (1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

"Defense counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). The failure to reasonably investigate a case can constitute ineffective assistance of counsel. *People v Trakhtenberg*, 493 Mich 38, 51-55; 826 NW2d 136 (2012). However, "the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks and citation omitted).

We conclude that Labarge has failed to demonstrate that she was prejudiced by her trial counsel's performance. At trial, trial counsel cross-examined the victim regarding his location in proximity to Labarge's vehicle and his relationship with Labarge. Trial counsel also argued, in relation to a motion for a directed verdict, that the victim's "story" was not physically possible. Specifically, trial counsel argued, in relevant part, as follows:

> And [the victim's] story, with the distance of a foot and a half and six to eight inches and leaping out of the way just [does not] make any sense.

> There's—there's no way that it's physically possible for this to have happened.

After the trial court denied Labarge's motion for a directed verdict, trial counsel called Officer Monti. Officer Monti testified that, when reporting the crime, the victim claimed to have only met Labarge once before. Testimony was also elicited from Labarge about a different court case, in which the victim was the defendant and Labarge was the complaining witness. During closing arguments, trial counsel noted that the case came down to credibility and argued that the victim was not credible because his account of the events was either impossible or improbable. Trial counsel also argued that Officer Monti's testimony contradicted the victim's testimony given that the victim testified that he had seen Labarge five or six times prior to July 12, 2017. Trial counsel further argued that the victim had a motive to lie and that, because he had misrepresented his relationship with Labarge when speaking with Officer Monti, the victim was not credible. Despite the fact that trial counsel highlighted the impossibility or implausibility of the victim's statements and argued that he was not credible, the trial court found the victim to be a credible witness.

Specifically, the trial court found that the victim was "a convincing witness," who immediately took photographs and a video and filed a complaint with law enforcement. In contrast, the trial court found that Labarge lacked credibility. In so finding, the trial court emphasized that Labarge's testimony regarding Jamar was "utterly unconvincing." Specifically, the trial court found it unconvincing that Labarge happened to be in the exact location where the victim worked with a man who was willing to aggressively approach the victim. The trial court also found that it was "beyond unbelievable" that Jamar, whom Labarge testified to having just met that day, would approach a man he did not know. Furthermore, the trial court found that it was unlikely that Labarge would see the victim with a gun on Eight Mile Road and not report it to law enforcement despite the fact that the victim had allegedly previously attacked Labarge with a gun. Finally, the trial court found that Labarge lacked credibility because she testified that she agreed to lie in court in the other criminal matter if the victim apologized, and that Labarge had

contacted the victim's acquaintances in an effort to influence the victim. Thus, the trial court found the victim to be credible and Labarge not to be credible. "[R]egard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008) (alternation in original; citation omitted). In light of this record, we cannot conclude that the trial court's factual findings and assessment of witness credibility were clearly erroneous. See *id*. at 130-131.

Additionally, we have no reason to believe that if Dr. Button had testified at trial, the trier of fact would have given more weight to his testimony than that of the victim. Dr. Button's opinion hinged on very specific measurements that the victim provided at trial regarding his proximity to Labarge's vehicle. Specifically, based on the measurements provided by the victim at trial and the acceleration and width of a 2015 Dodge Dart, Dr. Button concluded that "it would take less than a half second for the Dodge Dart to contact . . . pedestrians." Thus, Dr. Button's testimony only established that, if Labarge had accelerated at a specific rate and the victim was standing approximately two feet in front of the midline of Labarge's vehicle, or six to eight inches from the vehicle near the driver's side headlight, the victim would have been hit. Importantly, however, when Dr. Button was asked during cross-examination whether Labarge would have hit the victim if she "had only lurched the car," Dr. Button responded, "I haven't conducted analysis pertaining to . . . lurching so I couldn't tell you for sure." Dr. Button was also not sure how long it would take a 2015 Dodge Dart to strike a pedestrian who was standing six feet away from the vehicle.

When rendering the verdict, the trial court could have found that the victim's measurements were incorrect or a mere approximation, but still found him to be a credible and reliable witness. Indeed, regardless of the victim's exact location in proximity to Labarge's vehicle, the victim's testimony supported that Labarge revved her engine and moved her vehicle forward when the victim was walking past the vehicle. The victim testified that he had to jump out of the way to avoid being hit and that he was left feeling "[f]rightened," "[s]cared," and "[t]errified." As already stated, the victim immediately contacted his attorney and then law enforcement.

Dr. Button's testimony did not disprove that Labarge revved her engine and/or moved her vehicle forward, causing the victim to reasonably believe that he was in danger of an immediate battery. As noted by the trial court following the *Ginther* hearing, Labarge's conviction could be sustained based on findings that Labarge revved her vehicle's engine and/or moved forward with the intention of making the victim fear an immediate battery.[3] Indeed, when rendering the verdict, the trial court made these findings:

> Ms. LaBarge saw the [victim] and revved the engine and/or moved her car forward sufficiently to reasonably lead [the victim] to believe that he was about to be hit by her car . . . . Ms. LaBarge intended to frighten [the victim] . . . . [The victim's] version of the events is credible[.]

---

[3] "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

Because Dr. Button's testimony does not disprove that those events occurred, we conclude that Labarge has not established a "reasonable probability" that the outcome of trial would have been different if Dr. Button had testified. See *Sabin (On Second Remand)*, 242 Mich App at 659. See also *Dendel*, 481 Mich at 132.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Cynthia Diane Stephens
/s/ Thomas C. Cameron